[ Argued November 16, 1892; decided January 16, 1893; reargued July 17, 1893; decided February 19, 1894.]

## PENNOYER *v.* WILLIS.*

[S. C. 36 Pac. Rep. 568.]

PRINCIPAL AND AGENT — NOTICE TO AGENT THAT WILL BE BINDING ON PRINCIPAL.—As to third parties, notice to an agent while acting within the scope of his authority is notice to the principal, but it is equally true that such notice, in order to bind the principal, must relate to the business or transaction in reference to which the agent is authorized to represent his principal. If the notice relates to a matter over which the agent has no authority, and concerning which he is not authorized to act for his princi-

*This case was first decided on January sixteenth, eighteen hundred and ninety-three, but on the application of defendant a reargument was allowed on July seventeenth. The opinion here published was handed down in February, eighteen hundred and ninety-four, reversing the former decision, which will be found in 22 Pac. Rep. 57. The question of the capacity of plaintiffs to maintain the action, passed upon in the first opinion, is not discussed here, and the matter of rejecting evidence tending to show the duties of the local custodian of the funds after the board had approved the application for the loan was not considered before. The present opinion is by the direction of the court published as the official exposition of its views. It was prepared for 25 Or. but by a confusion of copy was omitted.— REPORTER.

pal, although he may be an agent for other purposes, it will not affect the principal. Within the principle thus expressed, an agent whose duty is to care for certain funds and to report at stated periods the condition of such funds, is not such an agent as that previous notice to him of an encumbrance on lands offered to his principal as security for a loan of the funds in the agent's hands will be notice to his principal, since such agent had no discretion in the matter of making loans, or passing on the sufficiency of title, all these matters being intrusted to other people; but if to such agent is confided the duty of examining the title to the security subsequent to his principal's acceptance of the offer, to see that no change has occurred, and he is invested with discretion to withhold the money in case he learns of any defect in the security offered, and, after receipt of the order to make the loan, knowledge of an outstanding incumbrance is present in his mind, whether acquired before or during his agency, such knowledge is binding on the principal.

APPEAL from Douglas: MARTIN L. PIPES, Judge.

This action was brought by Sylvester Pennoyer, governor, George W. McBride, secretary of state, and G. W. Webb, state treasurer, constituting the state board of land commissioners for the sale of school and university lands against Wm. R. Willis to recover two thousand eight hundred and seventy-three dollars and forty-eight cents damages in consequence of defendant's negligence in certifying to the title of real property offered as security for a loan from the state school fund. The material facts are as follows: At a meeting of the board of school land commissioners, held May twenty-seventh, eighteen hundred and seventy-nine, plaintiffs' predecessors in office appointed the defendant their local agent and attorney for Douglas County, whose duty it was to ascertain the value of, and the state of the title of, any lands offered as security for any loan, and to report the same to the board. The defendant was notified of his appointment, and on June seventeenth, eighteen hundred and seventy-nine, he wrote a letter to the board accepting the same. On November twenty-eighth, eighteen hundred and eighty-two, the board

of commissioners, in pursuance of the statute authorizing them to adopt rules and regulations for the management of the school, university, or agricultural college funds, duly adopted, among others, the following rules and regulations in reference to the loan of the school funds of the state: "Rule 1. Such of the county treasurers of the state as may, from time to time, be designated by the board of commissioners for the sale of school and university lands, and for the management of the funds arising therefrom, shall receive, receipt for, and safely keep separate any school, university, or agricultural college funds, or notes or other securities for such funds, loaned in their respective counties, subject to the order of the board." "Rule 2. In order to effect loans of the irreducible school fund, university fund, or agricultural college fund, the board shall appoint in such of the counties as it shall deem necessary a suitable and proper person, to be designated and known as the local agent of the board in the county for which he shall be so appointed, whose duty shall be to ascertain the value of, and the state of the title of, any lands offered as security for any loan, and report the same to the board." "Rule 3. Any person or persons in any of the counties in which a local agent shall have been appointed, desirous of negotiating a loan of any of the funds referred to in the foregoing rule, shall present his or their application to such agent, who shall, if he deem such loan a desirable one to be made by the board, forward the application with his opinion as to the value of the property offered as security, and the condition of the title, to the board, with such recommendation as he may deem proper; but the applicants shall pay to such agent his reasonable charges for examining the title and ascertaining the value of the property proposed as security, and for preparing the proper note and mortgage; *provided, further,* that no application for the loan of any sum less than two hundred

and fifty nor more than five thousand dollars shall be entertained." "Rule 4. The security required for a loan of any of the funds mentioned above shall consist of real estate, of this state, and not less than three times the value of the loan desired, exclusive of perishable improvements, of unexceptionable title, and free from all liens or incumbrances, or a deposit of United States bonds, or the bonds or treasury warrants of this state, of a face value of not less than twenty-five per cent. in excess of the amount of the loan desired." "Rule 9. It is hereby made the duty of the several county treasurers of the state, in whose custody there shall be at any time any of the funds herein mentioned, to report to the board once a month the condition of said funds, giving a full statement of the receipts and disbursements of said funds for that month. And the local agents shall, from time to time, advise the board as to the condition of the various securities in the county, for which they are appointed.

Under the provisions of the first rule above referred to W. N. Moore, treasurer of Douglas County, was one of the custodians of the school fund, and in February, eighteen hundred and eighty-four, Joseph Roberts applied to him for a loan of two thousand dollars, offering as security certain lands in Douglas County. This application in writing was presented to the defendant to have the title examined, and he made and signed the following certificate: "I hereby certify that I have thoroughly examined the records of Douglas County, Oregon, to ascertain the condition of the title to, and the liens upon, the above described real estate, and it appears from said records and I believe that Joseph Roberts is the owner thereof in fee, and the same is free from all liens and incumbrances, except a mortgage by D. W. Nerney, jr., to school board of six hundred dollars. And I further certify that I have used due diligence to ascertain the actual cash value of

said real estate, and believe the same to be six thousand dollars, excluding perishable improvements.

"WM. R. WILLIS, local agent."

This certificate was false in that at that time the real property described in the application was subject to the lien of a mortgage of twenty-eight thousand dollars to S. S. Marks & Company, and of record in that county, of which fact the defendant had knowledge and notice. On Febru ary twelfth, eighteen hundred and eighty-four, the appli- cation of Joseph Roberts for this loan, accompanied by the above certificate, was presented to the board of com- missioners with this indorsement, viz.: "I would recom- mend to your favorable consideration the within applica- tion for a loan, as I deem the same a desirable one, and the security offered ample. I now have on hand sufficient school funds to meet the loan, if ordered.

"W. N. MOORE, local agent."

—and was by them approved, and W. N. Moore was by order of the board directed to advance to Joseph Roberts the amount for which he had applied, and Moore did so without consulting defendant, and without having the Marks mortgage satisfied. The mortgage to S. Marks & Company and the mortgage to the board were foreclosed, and upon a sale of the mortgaged premises under a decree in favor of the board, and against Joseph Roberts, two hundred dollars was realized upon the amount loaned, and two thousand eight hundred and seventy-three dollars and forty-eight cents was lost to plaintiffs. Joseph Roberts was and is entirely insolvent.

Testimony was given tending to show that when Rob· erts applied for the loan, he went to the county treasurer. who made out his application, and went with him to the defendant's office to have the title to the property exam-

ined; that Friedlander, one of the mortgagees of the Marks & Company mortgage, went with them; that defendant examined the title and found the Nerney mortgage for six hundred dollars, and the Marks & Company mortgage for twenty-eight thousand dollars; that in making out the certificate he noted the Nerney mortgage, which filled the blank space reserved in the printed application for that purpose; that he was about to interline the certificate, and note the Marks & Company mortgage, when Friedlander represented to him that this mortgage had been fully paid, and would be satisfied on the record before the application could be returned from Salem; that, relying upon these representations, he did not enter that mortgage in the certificate, but told Moore not to advance any money to Roberts till the mortgage had been satisfied; that when the order came from the board approving the loan, Roberts and wife executed the note and mortgage, and Moore paid over the money without consulting Willis, or informing him that the application had been approved, and that he had no knowledge of the execution of this mortgage till a long time thereafter; that, while the certificate was not true, it was not fraudulent, nor made with any intent to deceive any one; and that he acted upon the honest belief that the Marks & Company mortgage had been fully paid, and would be satisfied on the record. The defendant also offered evidence tending to show that with the exception of examining and certifying to the title and value of land offered as security, and the approval of applications, the entire matter of making loans in Douglas County was entrusted to Moore; that the board furnished him with blank applications, and blank notes and mortgages; that he prepared all applications for loans, and had defendant examine the title of land offered as security; that defendant's certificate of title was delivered to him, and by him forwarded to the board; that the applications, when ap-

proved, were returned to Moore with directions to make
the loans; that Moore prepared and had executed the
necessary notes and mortgages, and was entrusted with
the duty of ascertaining that the title remained unchanged
after the date of defendant's certificates, and that all liens
noted therein were properly discharged; that defendant
had no communication with the board concerning this or
any proposed loan, except through Moore, and never had
been entrusted by it with any duty in respect to loans, ex-
cept examining and certifying to the title and value of
land offered as security, when requested by Moore; that
after the Roberts application had been returned to Moore,
and while in the discharge of the duty entrusted to him, he
had in mind the Marks & Company mortgage. This evi-
dence was all excluded, and the court instructed the jury
that the issue made by the pleadings, of Moore's agency,
was immaterial. The ruling of the court in excluding this
evidence and so instructing the jury is assigned as error,
upon which the defendant chiefly relies for a reversal of
the judgment.                                        REVERSED.

*Messrs. A. M. Crawford,* and *Wm. R. Willis,* for Appellant.

*Messrs. Geo. E. Chamberlain,* attorney-general, *J. W.
Hamilton,* and *J. C. Fullerton,* for Respondents.

Opinion by MR. JUSTICE BEAN.

The contention for the defendant is that the evidence
offered and excluded tended to show that Moore was such
an agent of the plaintiffs as that his knowledge at the time
the loan was made of the existence of the Marks & Com-
pany mortgage was notice to the plaintiffs, and, as a con-
sequence, they were not misled by his certificate, but had
knowledge through their agent of the existence of the out-
standing incumbrance before they parted with the money.

It must be conceded that, in order to recover in this action, plaintiffs must show, not only that defendant's certificate was false, but that, relying thereon, and without knowledge of its falsity, they were induced to and did part with the money. If, before the loan was consummated and the money paid over to Roberts, they had knowledge of the Marks & Company mortgage, either directly or through some authorized agent, and, notwithstanding such knowledge, parted with the money, they cannot hold the defendant liable for the loss, although his certificate may have been false. It becomes important, therefore, to consider whether the evidence excluded tended to show that Moore's relation to the plaintiffs was such that they would be chargeable with the knowledge he possessed at the time he consummated the loan and paid over the money, of the Marks & Company mortgage. It is a familiar and well settled rule that, as to third parties, notice to an agent while acting within the scope of his authority is notice to the principal. But it is equally as well settled that such notice, in order to bind the principal, must relate to the business or transaction in reference to which the agent is authorized to act for and on behalf of his principal, and to matters over which his authority extends: Story on Agency, § 118; Mechem on Agency, § 718. If it relates to a matter over which the agent has no authority, and concerning which he is not authorized to act for his principal, although he may be an agent for other purposes, it will not affect the principal or be binding on him: *Congar* v. *Railway Company*, 24 Wis. 157; *Roach* v. *Karr*, 18 Kan. 529. This rule is generally said to be based upon the theory that it is the duty of the agent to communicate to his principal the knowledge possessed by him relating to the subject matter of his agency, and material to his principal's protection. Such notice, in order to bind the principal, must, therefore, come to an agent who has authority

to act or deal in reference to those matters which the knowledge or notice affects, and which, upon grounds of public policy, it is presumed he has communicated to his principal. Now, in view of the rules of the board prescribing the duties of the defendant and of Moore, it is clear that Moore was not such an agent at the time defendant's certificate was made, as that notice to him of the Marks & Company mortgage would operate to relieve the defendant from liability for the negligent or unfaithful discharge of his duty. Moore was a mere custodian of the fund, holding it subject to the order of the board, with no power or authority to determine whether or not a loan should be made, or to contract one, or to pass upon the title or sufficiency of the security offered, nor was he an agent to whom the board looked for information on these subjects, and such matters were not within the scope of his employment. The power to loan the school fund, and determine the sufficiency of the security offered, was by law vested solely in the plaintiffs, and they alone assumed to exercise such power. It was for them to determine in all cases whether or not a loan should be made. As a matter of convenience to the board and to the public, Moore, as county treasurer, was made a depositary of a portion of the school funds, and the custodian of the notes and mortgages taken for loans thereof in his county, and authorized to receive payments thereon and pay over to borrowers the amount applied for when directed by the board.

The defendant's duties were of an entirely different character, requiring in their proper discharge the special knowledge incident to his profession as an attorney, which the treasurer was not expected to have. He was appointed for the purpose of ascertaining and reporting the state and condition of the title of land, and in assuming to

discharge that duty established the relation of principal and agent, or attorney and client, between him and his principal. His representations to the plaintiffs, therefore, were decisive of the status of the Roberts' property, so far as they were concerned, and they had a legal right to rely and act upon them in ordering the loan made, and for any neglect or misrepresentations in the performance of his duty in the premises whereby an injury resulted he is responsible. To him alone they looked for information as to the status of the property, and not to any statements or representations of Moore. Nor was Moore under any legal or moral obligation at that time to report to them the condition of the title; his duties and those of the defendent were separate and distinct in relation to their common principal, and each was responsible for the faithful discharge of the particular duties imposed upon him by his employment, and we are aware of no rule of law which can relieve the defendent from liability by showing that at the time he knowingly made an incorrect statement or report to his principal he informed some other agent of the same principal, who had no authority to deal with reference to the subject matter of the report, that such statement was not true. And, besides, the rule that the principal is chargeable with what the agent knows is for the benefit of third persons, and is founded upon the theory that the agent is at liberty and is presumed to have communicated such knowledge to the principal, or, if he has not, still, the principal having entrusted the agent with the particular business, the other party has a right to deem his acts and knowledge obligatory upon the principal, otherwise the neglect of the agent, whether designed or not, might operate most injuriously to the rights and interests of such party. But it is difficult to preceive what application the rule can have, when the understanding between an agent and such party is that the knowledge of the agent is not

to be communicated to the principal but to be withheld from him.    It is but a fair inference from this record, that it was not intended or expected that Moore should inform the board of the Marks & Company mortgage, nor was the information imparted to him for that purpose, but only that he might withhold the money until the mortgage should be satisfied of record, in case the loan should be ordered by the plaintiffs.    It is clear, therefore, that defendent cannot exonerate himself from liability upon his said certificate by showing that at the time he made it he informed Moore of the true status of the property, unless Moore was afterward entrusted by the board with the duty of examining the title to the land offered as security, subsequent to defendant's certificate, and during the performance of which he had in mind or remembered the information previously given him by the defendant.

The law provides that the school fund shall be loaned only on unincumbered property to applicants having a title thereto free from defects, and the board is only authorized to make a loan on real property so circumstanced.    It was therefore its duty to ascertain that the title was in such condition at the time the loan was made and the money paid over, some three month's after the date of defendant's certificate, but if it neglected to do so such neglect would, of course, not relieve the defendant from liability upon his certificate.    In approving the application and ordering the loan it had a right to rely and act upon defendant's certificate as decisive of the status of the property at the time it was made, and if, relying thereon, it simply ordered and directed Moore, who, under its rules, was a mere custodian of the fund, to pay over the money to Roberts, and by reason of defendant's incorrect certificate it was lost, defendant would be liable, although Moore may have known of the outstanding incumbrance.    Moore's duties, as prescribed by the rules of

the board, were those of a mere custodian or depositary holding the fund subject to the order or direction of the board, and, if he assumed to negotiate a loan, prepared notes and mortgages, or examined titles without any other authority from the board, he was acting without the scope of his employment, and no knowledge concerning the title of land offered as security which he might acquire in so doing would be binding upon the board. But if the board returned the Roberts' application to him, and entrusted him with the duty of ascertaining that no change had oc curred in the title subsequent to defendant's certificate, he became not only a mere custodian of the fund, but an agent for the purpose of seeing that the title was in the condition required by law at the time the loan was con- summated, and invested with the discretion of withholding the money in case knowledge should come to him of any defect in the security offered. He would not be expected or required to examine the condition of the title prior to the date of defendant's certificate, but if, after the receipt of the order to make the loan, and before paying over the money, knowledge of an outstanding incumbrance was present in his mind, however acquired, it would, under such circumstances, be knowledge possessed by him within the scope of his employment, and with which his principal would be chargeable, whether acquired prior to the commencement of his agency or during the contin- uance thereof: Mechem on Agency, § 721; *The Distilled Spirits*, 78 U. S., (11 Wall.) 351. And if, notwithstanding such knowledge, he paid over the money to Roberts, the defendent is entitled to avail himself of Moore's negli- gence as a defence, because in such case the proximate cause of the loss would be the negligent performance of a duty by another agent, and not his false certificate. Whether Moore was such an agent, or the mere custodian of the fund, as prescribed in the rules, was, under the

pleadings, a question for the jury, and could not be taken from them if there was any evidence, however slight, tending to support defendant's contention.   The evidence offered and excluded tended to show that the board furnished Moore with blank applications for loans, and blank notes and mortgages; that all applications were received by him, and that at his request defendant examined the title and certified to the value of the land; that the applications were made to Moore and forwarded to the board at Salem for its approval, and that it was the custom of the board to return all applications to him without any special instructions, with an order endorsed thereon directing the loan to be made; that he examined the record to see that no transfers had been made or liens acquired subsequent to defendant's certificate; prepared the necessary notes and mortgages, attended to the recording of the same, and paid over the money; endorsed all applications for loans, and signed his reports to the board as "local agent," and continued to act as an agent of the board after he had ceased to be county treasurer; in fact, was the only person through whom the board received applications for loans or with whom it had any communication whatever concerning loans of money in that county.   This evidence was competent, it seems to us, as testimony tending to show that when the board returned the Roberts' application to Moore, it entrusted him with the duty of ascertaining that the title was in the condition required by law before paying the money over, and should have been admitted and the question of his agency submitted to the jury, under proper instruction by the court.   The judgment must therefore be reversed and a new trial ordered.

REVERSED.