Argued 17 December, 1903; decided 1 February, 1904.

**DIGHT v. CHAPMAN.**

[75 Pac. 585.]

BANKRUPTCY—PROVABLE CLAIM.

1. A decree obtained in Minnesota against a domestic corporation and its stockholders, adjudging the company insolvent, establishing its indebtedness, awarding a judgment against it for that sum, and also against the stockholders severally for the par value of their respective holdings, is a "provable" debt against a nonresident stockholder, within the meaning of section 17 of the national bankruptcy act of 1898, where it was entered prior to the adjudication of insolvency of the stockholder, even though such stockholder did not appear in the original suit and was always beyond reach of process.

BANKRUPTCY—RECEIVER NOT A CREDITOR.

2. A receiver appointed under a state law to collect the unpaid stock subscriptions due from the shareholders of an insolvent corporation is not a "creditor" of a bankrupt shareholder, under the bankruptcy act of 1898, § 1, subd. 9; but he is the "duly authorized agent" of the creditors of the insolvent corporation, within the meaning of that act, for the purpose of proving their claim in bankruptcy.

DISCHARGE—IMPUTED NOTICE TO AGENT OF CREDITORS.

3. The notice and knowledge of the bankruptcy of a person against whom a receiver has a claim, obtained as cashier of a bank that also has a claim against the same bankrupt, is binding on such cashier in his capacity as receiver and agent of the creditors whom he represents, and he is chargeable with notice of the bankruptcy proceedings, within the scope of section 17, subd. 3 of the bankruptcy act of 1898.

From Multnomah: ARTHUR L. FRAZER, Judge.

This is an action by John H. Dight, as receiver for the collection and enforcement of the liability of the stockholders of the Duluth Dry Goods Company, against Sim-

coe Chapman to recover the par value of certain shares of stock in that corporation. The complaint states the facts constituting the plaintiff's right to maintain this action, and the defendant's liability for the sum demanded. The answer, after admitting almost all the allegations of the complaint, for a separate defense alleges that the defendant was duly adjudged a bankrupt, of which fact the plaintiff, as such receiver, had actual knowledge and notice, and that the defendant's discharge therefrom constitutes a plea in bar. The reply denies the allegation of new matter in the answer, and, the cause having been tried without a jury, the findings of the court are, in effect, that about September 1, 1890, the Duluth Dry Goods Company was incorporated in Minnesota under the laws thereof, and issued 1,309 shares of the capital stock of the par value of $100 each, for 50 shares of which the defendant subscribed and became the owner, paying therefor the sum of $5,000 ; that under the constitution and laws of that State a stockholder in such a corporation is liable for its debts to the extent of the par value of his stock, which obligation is enforceable by a receiver appointed for that purpose on behalf of the creditors of such corporation, who may recover such par value in the courts of any sister State that can secure jurisdiction of the person of such stockholder; that Luther Mendenhall, a creditor of the Duluth Dry Goods Company, in behalf of himself and of all other creditors who might join therein, instituted a suit in the state court of Minnesota against the corporation and its stockholders residing in that State, and, other creditors having intervened, a decree was rendered February 25, 1899, establishing the indebtedness of the corporation at $81,717.76, and awarding a recovery against it for that sum, and against the stockholders severally for sums equal to the par value of the stock owned by each ; that in pursuance of the decree the plaintiff herein was appointed

receiver to collect the sums so awarded and to enforce the liability against nonresident stockholders, and, having duly qualified May 6, 1899, he has ever since been and now is such officer; that the defendant, at the time this suit was instituted, was a resident of Chicago, and, not having been made a party thereto, though the owner of stock in the corporation, he, on January 19, 1900, filed in a federal court his petition in bankruptcy, together with a schedule of his assets and liabilities and a list of his creditors, but failed to include therein his liability on account of such stock, or to name the creditors of the corporation; that he was thereupon adjudged a bankrupt, and on notice to creditors a trustee was elected, who, having duly qualified, took charge of and sold his assets, realizing therefrom a sum sufficient to pay his secured debts and to distribute the sum of $10 among his other creditors, and, the estate having been settled, the defendant was discharged March 19, 1900; and that soon after filing the petition in bankruptcy, and during the pendency of the proceedings, plaintiff had actual knowledge and notice thereof, obtained while cashier of the First National Bank of Duluth, one of the defendant's creditors, by reading notices sent from time to time by the referee in bankruptcy to the bank. From these findings the court concluded that at the time the decree was rendered establishing the indebtedness of the corporation the defendant was liable to its creditors in the sum of $5,000, which was a provable debt against his estate; that plaintiff's actual knowledge of the proceedings was equivalent to naming the creditors of the corporation in the schedule; that the defendant's discharge in bankruptcy released him from all liability on the obligation sued on; and that he was entitled to a dismissal of the action; and, judgment having been rendered in accordance therewith, plaintiff appeals.                                                    AFFIRMED.

For appellant there was a brief over the names of *Dolph, Mallory, Simon & Gearin,* and *Green & Wood,* with an oral argument by *Mr. John M. Gearin.*

For respondent there was a brief over the name of *Coovert & Stapleton,* with an oral argument by *Mr. Elmer E. Coovert.*

MR. CHIEF JUSTICE MOORE, after stating the facts in the above terms, delivered the opinion of the court.

1. Section 17 of the Act of Congress to establish a uniform system of bankruptcy throughout the United States, approved July 1, 1898* (30 Stat. U. S. 544, 550 *et seq.* c. 541, U. S. Comp. St, 1901, p. 3428), is, so far as material herein, as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." The first inquiry presented is whether or not the claim here sought to be enforced is a debt "provable" against the bankrupt's estate, within the meaning of the term as used in the statute. To answer the question necessitates an examination of the constitution and laws of Minnesota in respect to the liability of stockholders of insolvent corporations in that State. "Each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him": Const. Minn. Art. 10, § 3. The statute of that State regulating proceedings to enforce the liability of stockholders of an insolvent corporation, as stated in the findings and admitted by the pleadings, is, in substance, as follows: Whenever a creditor of any corporation seeks to charge the stockholders thereof

---
* 1 Fed. Stat. Am. 525, 578.

with any liability created by law, he may maintain an action for that purpose, and secure an order requiring all creditors to exhibit their claims and become parties within a reasonable time ; and, if it appear that the corporation is insolvent, the court may ascertain the liabilities of the respective stockholders, and adjudge the sum payable by each, and, when necessary, may appoint one receiver to take charge of the assets of the corporation, and another to enforce the liability of the stockholders. The statute of Minnesota denominates the procedure specified "an action," but, as the distinction between suits and actions has been abolished in that State, it is evident that the mode prescribed partakes of the character of a suit in equity: *Allen* v. *Walsh*, 25 Minn. 543; *Johnson* v. *Fischer*, 30 Minn. 173 (14 N. W. 799); *Hanson* v. *Davison*, 73 Minn. 454 (76 N. W. 254).

The findings admit that the decree of the Minnesota court established the insolvency of the corporation, the amount of its indebtedness, and the number of shares of capital stock issued by it, from which it follows that a payment by each stockholder of 62½ per cent of his capital stock, if solvent, would have discharged the entire indebtedness, notwithstanding which he was required to pay a sum equal to the par value thereof. Though the defendant was not a party to the decree rendered against the corporation, he cannot, in his own defense, deny such liability, for a judgment against the corporation is, in effect, a judgment against the stockholder: *Holland* v. *Duluth Iron M. & D. Co.* 65 Minn. 324 (68 N. W. 50, 60 Am. St. Rep. 480); *Holyoke Bank* v. *Goodman Paper Mfg. Co.* 9 Cush. 576; *Hanson* v. *Davison*, 73 Minn. 454 (76 N. W. 254). Such decree, however, as to the ultimate question of a nonresident stockholder's liability and the measure thereof, is not conclusive as against such stockholder who was not made a party to the suit, and will be regarded as open in the

trial of an ancillary action based on the decree: *Hale* v. *Hardon*, 95 Fed. 747 (37 C. C. A. 240). Under the constitution and statute of Minnesota, stockholders of corporations in that State occupy a relation tantamount to sureties to its creditors for the payment of its debts, for which each stockholder is severally liable to the extent of the par value of his stock: *Allen* v. *Walsh*, 25 Minn. 543; *Harper* v. *Carroll*, 66 Minn. 487 (69 N. W. 610, 1069). "Such liability," says Aldrich, J., in *Hale* v. *Hardon*, 95 Fed. 747 (37 C. C. A. 240), in construing the law of Minnesota, "is not like that of being assessed for nonpayment of the full amount of subscription to stock, for the reason that it is not an asset of the corporation." The measure of the corporation's indebtedness properly chargeable to the defendant is proportionate to the number of shares of stock owned by others from whom the pro rata share, augmented by the insolvency of others, could have been collected. This ratio must remain uncertain until it is determined who cannot pay their just proportions, thereby imposing upon the solvent stockholders the burden of discharging the entire obligation if the par value of their stock equals a sum sufficient for that purpose. Such uncertainty, however, does not prevent the Minnesota court from rendering a decree against each stockholder for a sum equal to the par value of his stock, though the aggregate awarded exceeds the amount of the indebtedness of the insolvent corporation: *Harper* v. *Carroll*, 66 Minn. 487 (69 N. W. 610, 1069). In that case, Mr. Justice Canty, in speaking upon this subject, says: "Then one of two propositions must be true: first, the creditors are entitled to successive judgments for successive assessments until the full limit of such statutory liability is exhausted, if such successive assessments and judgments are made necessary by reason of the insolvency of stockholders; or, second, the creditors are entitled to one judgment for the full amount of such statutory liabil-

ity. We are of the opinion that the latter is the proper method of procedure, and that but one judgment should be rendered, which should cover the utmost possible liability of each stockholder to the creditors."

The liability assumed by a person when he secures stock in a Minnesota corporation is to pay, in case of its insolvency, a ratable share of its indebtedness; but, as its creditors ought not to be subjected to unnecessary delay in the collection of their demands, this liability, in an ancillary action based on the decree establishing the indebtedness of an insolvent corporation, is measured by the par value of the stock issued, and, if any sum remains after the creditors have been fully paid, the ratable part thereof can be returned to the stockholders who have contributed more than their just proportion: *Allen* v. *Walsh*, 25 Minn. 543; *Marr* v. *Bank of West Tenn.* 4 Lea, 578. Mr. Chief Justice START, in *Hanson* v. *Davison*, 73 Minn. 454 (76 N. W. 254), in speaking of this method of enforcing payment of the par value of stock from a nonresident holder thereof, says: "The only objection, in justice, such stockholder could make to such a procedure, would be that his right of contribution could not be worked out in such ancillary action. If he were called on to pay only his pro rata share of the deficiency, treating all the stockholders as solvent, the objection would wholly fail; but it would seem that his right to contribution, in case he was required to pay more than his share as between himself and the other stockholders, is subordinate to the equities of the creditors, as he can secure such contribution by appearing in the original action." It will be remembered that the defendant did not appear in the original suit, but, as the decree in that case was rendered prior to his being adjudged a bankrupt, whereby all the stockholders were required severally to pay a sum of money equal to the par value of their stock, such decree resolved the uncertainty,

imposed the contractual liability, and, in our opinion, rendered the sum so awarded a "provable" debt within the meaning of the bankruptcy act: *Riggin* v. *Magwire*, 82 U. S. (15 Wall.) 549; *In re Fife*, 109 Fed. 880 (6. Am. Bankr. R. 258).

2. The next question to be considered is whether or not plaintiff was such a representative of the creditors of the insolvent corporation as to authorize him to prove the indebtedness so established against the bankrupt's estate. The act of Congress of July 1, 1898, § 7, subd. 8* (30 Stat. 544, 548, U. S. Comp. St. 1901, p. 3425), requires a voluntary bankrupt to make under oath and file in court, with his petition, a schedule of his property and a list of his creditors, etc. This act, in construing the meaning of certain words therein used, contains the following declaration : "'Creditor' shall include any one who owns a demand or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy": Section 1, subd. 9 † (30 Stat. 544, U. S. Comp. St. 1901, p. 3419). Bouvier, in his Law Dictionary, in defining the term "creditor," says : "He who has a right to require the fulfillment of an obligation or contract." See, also, 8 Am. & Eng. Ency. Law (2 ed.), 240. If the definition of this distinguished lexicographer be accepted as correct, plaintiff is the creditor, for his appointment vested in him the right to require the fulfillment of the defendant's obligation. However the word "creditor" may be defined in other cases, Congress, in procedings of this kind, has limited it to one owning a demand or claim provable in bankruptcy. It cannot be consistently contended that plaintiff was the owner of the claims which formed the basis for determining the amount of the corporation's indebtedness, and hence he is not a creditor within the meaning of the act under consideration.

---

*1 Fed. Stat. Am. 525, 559.    † 1 Fed. Stat. Am. 525, 528.

*a*

The word "creditor," as defined by Congress, also includes his duly authorized agent, attorney, or proxy. None of the debts against the bankrupt's estate being owned by plaintiff, so as to make him a creditor, it is proper to consider whether or not, by reason of his appointment as receiver, he represents the creditors, and comes within any one of the included classes. Section 56*a* of the bankruptcy act* (30 Stat. 544, 560, U. S. Comp. St. 1901, p. 3442) is as follows: "Creditors shall pass upon matters submitted to them at their meetings by a majority vote in number and amount of claims of all creditors whose claims have been allowed and are present, except as herein otherwise provided." A text-writer, in construing the language quoted in connection with a prior clause of the act, says: "By section 1, subd. 9, it is declared that the term 'creditor' shall include not only the owner of the demand himself, but ' his duly authorized agent, attorney, or proxy.' Any person, therefore, who assumes to represent a creditor in the functions referred to in section 56*a*, must be a 'duly authorized agent, attorney, or proxy' of the creditor. By General Order 21, subd. 5 (89 Fed. x, 32 C. C. A. xiii), it is provided what such due authorization shall consist of, as follows: ' The execution of any letter of attorney to represent a creditor * * may be proved or acknowledged before a referee or a United States commissioner or a notary public'": Collier, Bankruptcy (3 ed.), 304. Section 30 of the bankruptcy act† (30 Stat. 544, 554, U. S. Comp. St. 1901, p. 3434) is as follows: "All necessary rules, forms, and orders as to procedure and for carrying this act into force and effect shall be prescribed, and may be amended from time to time, by the Supreme Court of the United States." That court having prepared forms to evidence the appointment of representatives of creditors, it was held

---

*1 Fed. Stat. Am. 525, 661.        †1 Fed. Stat. Am. 525, 606.
44 Or.—— 18

in *In re Henschel*, 113 Fed. 443 (51 C. C. A. 277, 7 Am.
Bankr. R. 662), that, when the acknowledgment attached
to a proxy conformed literally to the form so prescribed,
it was not defective because it contained no venue; Wal-
lace, J., saying: "We agree with the Circuit Court of Ap-
peals for the Sixth Circuit that of the creditors giving
proxies those only are to be counted whose powers of
attorney were regarded as authorizing the attorney to
appear and participate in the meeting." Forms Nos.
20 and 21 (18 Sup. Ct. xxvii, xxviii) prepared by the
Supreme Court of the United States prescribe the mode
of constituting general and special attorneys respectively,
and form No. 35 (18 Sup. Ct. xxxiv) indicates the manner
of making proof in support of a claim by such attorney
for a creditor: Brandenburg, Bankruptcy, (2 ed.), 869, *et
seq.* From the rules and forms mentioned it might seem
that an agent or proxy could not be "duly authorized" to
prove a creditor's claim in bankruptcy, except on the pro-
duction of a power of attorney executed and acknowledged
in the manner indicated; and, if this be so, plaintiff did
not sustain that relation to the creditors of the Duluth Dry
Goods Company. Such cannot be the rule, however, for
creditors of a bankrupt who are infants or lunatics, and
therefore incompetent to appoint a representative to prove
their claims against his estate, are not to be denied the
right to share in the distribution of the fund because of
their minority or mental infirmity. Guardians, adminis-
trators, executors, and other legal representatives, who
have been appointed by competent authority to prove
claims against a bankrupt's estate, must necessarily be the
"duly authorized" agents, etc., within the meaning of the
act of Congress under consideration. Rule 38 promulgated
by the Supreme Court of the United States (18 Sup. Ct. x)
provides that the forms prescribed shall be observed and
used, "with such alterations as may be necessary to suit

the circumstances of any particular case." Thus provision has been made in these instances for proving claims against a bankrupt's estate; and to assume that federal or state courts would not, in such cases, consider the appointee "duly authorized" is to imply a denial of justice. Whether or not the plaintiff was "duly authorized" to represent the insolvent corporation's creditors must depend upon the duty his appointment imposed on him, and the relation he sustained to them.

It is impossible to determine whether the Minnesota statute in relation to the duties of a receiver appointed to enforce a stockholder's liability was offered in evidence, for the bill of exceptions contains none of the testimony given at the trial; but the pleadings admit and the court finds the substance of that law, from which it appears that plaintiff was authorized to collect from the resident stockholders of that State, who were parties to the decree, sums equal to the par value of their stock, and also empowered to maintain actions for that purpose in sister States against nonresident stockholders. In *Hale* v. *Hardon*, 95 Fed. 747 (37 C. C. A. 240), in construing the Minnesota statute, a distinction between a general receiver and a person appointed to enforce, in a foreign jurisdiction, payment of the par value of stock, is observed; the court holding that neither, unless expressly authorized by statute, was empowered to enforce the individual liability of stockholders for the purpose of paying the debts of the corporation. In that case, ALDRICH, J., in speaking of the title of a person appointed under the Minnesota statute to enforce such payment, and of the duties enjoined upon him, says: "It is of little consequence whether the person designated as the instrument or conduit through which equity runs from the court to the stockholders, and from recovery from the stockholders to the creditors, is called a receiver, an agent, a trustee, or an assignee. If some legal and equitable

means of recovery was intended and reasonably described, and the statutory agency called a 'receiver' is a convenient, safe, and reasonable agency to that end, it is of little consequence whether his duties here, as to the newly-created statutory right, are precisely those which have been heretofore exercised and discharged by the ordinary common-law or equity receiver; provided, of course, he may be said to fairly represent the legal and equitable idea intended by the statute. If a receiver, or this agency for this purpose, answers the statute, and the name does not offend the general law to such extent that the manifest intended statutory relief should be denied, the action should be upheld in his name and for the benefit of the creditors." Elsewhere in the opinion, after examining the law of that State in respect to the authority conferred upon such agent, it is said on page 764: "Therefore, by virtue of the law of Minnesota and the insolvency proceedings in that State, the court and its proceedings were subrogated to the rights and interests of all the creditors, and their right to sue stockholders, if an independent right to sue ever existed under this statute, was, at least for the time being, merged or suspended by operation of the law which involved their interest in such proceeding."

The pleadings admit that Mendenhall, having secured a judgment against the Duluth Dry Goods Company for the sum of $12,808.76, caused an execution to be issued thereon which was returned wholly unsatisfied, whereupon in behalf of himself and all other creditors who might join therein he instituted a suit against the corporation and its resident stockholders, resulting in a decree in their favor for the sum of $81,717.76. Though this decree evidently awarded a specific sum to each creditor, the right to control the subsequent proceedings was vested in the court: *Minneapolis Baseball Co.* v. *City Bank*, 66 Minn. 441 (69 N. W. 331, 38 L. R. A. 415). In that case Mr. Chief Justice

START, speaking on this subject, says: "While the liability of the stockholders must be enforced on the application of creditors, and not on that of the receiver, except in cases where the statute otherwise provides, yet it does not follow that the trial court has not the same control of the litigation as if it was conducted by the receiver. The creditor who first takes action to have such liability enforced, where he is plaintiff or subsequently comes into the action, has no exclusive right to control the litigation; and whenever the stockholders are once brought into the action the trial court should so far control the conduct of the litigation as to conserve and protect the rights and equities of both creditors and stockholders." The defendant's liability was limited in amount, and not to any particular creditor, but in favor of all creditors of the insolvent corporation (*Hanson* v. *Davison*, 73 Minn. 454, 76 N. W. 254), and, though the debt of each was evidently distinguishable in the decree, the several debts were nevertheless embraced in the aggregate sum, thereby extinguishing the authority of an individual creditor to prove his claim against the bankrupt's estate, but as the right to share in the distribution thereof should not be denied him, the plaintiff, as the representative of the court appointing him, and also of all the creditors, was, in our opinion, the "duly authorized" agent within the meaning of the act of Congress of July 1, 1898, and therefore the only person empowered to prove the debt evidenced by the decree in favor of all the creditors and against the defendant's estate. This conclusion is fortified when it is remembered that plaintiff was appointed to enforce the liability of the stockholders, and, as such obligation had become fixed by the decree, thereby constituting it a debt, it could have been proved against the bankrupt's estate, which was one of the means provided for the collection thereof; and it was just as incumbent on plaintiff to pursue this remedy, if the schedule had named the en-

tire list of creditors, as it was to institute the action in the case at bar.

3. The remaining question is whether or not plaintiff's knowledge of the bankruptcy proceedings, acquired while cashier of a bank which was also a creditor of the defendant, was received under such circumstances as to impute notice thereof to the creditors of the Duluth Dry Goods Company. The general rule is that knowledge of an agent, acquired while acting within the scope of his authority, relating to matters intrusted to him and over which his authority extends, is constructive notice to his principal: Story, Agency (9 ed.), § 140; Angell & Ames, Corporations, § 305; *Wood* v. *Rayburn,* 18 Or. 3 (22 Pac. 521); *Rayburn* v. *Davisson,* 22 Or. 242 (29 Pac. 738); *Willis* v. *Vallette,* 4 Metc. (Ky.) 186; *National S. Bank* v. *Cushman,* 121 Mass. 490. The reason for this rule is based on the theory that it is incumbent on the agent to impart to his principal all information that he may obtain which would affect his interests; and by invoking the presumption that such obligation has been performed the conclusion is reached that the principal is chargeable with notice thereof: *Pennoyer* v. *Willis,* 26 Or. 1 (36 Pac. 568, 46 Am. St. Rep. 594). There are several well-recognized exceptions, however, to this general rule. Thus, if the agent sustain a confidential relation to a third party, knowledge which he may obtain from the latter, and which it is his duty not to disclose, will not be imputed as notice to his principal : *McCormick* v. *Wheeler,* 36 Ill. 114 (85 Am. Dec. 388); *Ford* v. *French,* 72 Mo. 250; *Hood* v. *Fahnestock,* 8 Watts, 489 (34 Am. Dec. 489); *The Distilled Spirits,* 78 U. S. (11 Wall.) 356. If the agent conspire with a third party to defraud his principal, or if on his own behalf he intends to do so, the knowledge which he may obtain, and which it was his duty to disclose to his principal, will not be imputed to the latter : *Platt* v. *Birmingham Axle Co.* 41 Conn. 255; *Thomson-Houston Elec.*

*Co.* v. *Capital Elec. Co.* 65 Fed. 341 (12 C. C. A. 643); *Dilla-way* v. *Butler*, 135 Mass. 479; *Allen* v. *South Boston Ry. Co.* 150 Mass. 200 (22 N. E. 917, 5 L. R. A. 716, 15 Am. St. Rep. 185); *De Kay* v. *Hackensack Water Co.* 38 N. J. Eq. 158; *National Life Ins. Co.* v. *Minch*, 53 N. Y. 144. So, too, if an agent has an interest to subserve that is adverse to his principal, any knowledge that he may have acquired from a third party during the time of and relating to the matter of the agency will not be imputed to his principal : *Frenkel* v. *Hudson*, 82 Ala. 158 (2 South. 758, 60 Am. Rep. 736); *Wickersham* v. *Chicago Zinc Co.* 18 Kan. 481 (26 Am. Rep. 784); *Lyne* v. *Bank of Kentucky*, 28 Ky. 545; *Winchester* v. *Baltimore, etc. Ry. Co.* 4 Md. 231; *Stevenson* v. *Bay City*, 26 Mich. 44; *Barnes* v. *Trenton Gas Co.* 27 N. J. Eq. 33.

The reason upon which these exceptions rest is founded on the assumption that an agent is not supposed to communicate any knowledge he may have received, when by doing so he would betray a confidence reposed in him, reveal an intent to defraud his principal, or disclose an interest adverse to him ; for, unless it can be presumed, in the light of attending circumstances, that an agent will impart the knowledge so secured, the law will not impute notice thereof. It will be remembered that notice of defendant's bankruptcy was sent to his creditor, the First National Bank of Duluth, of which the plaintiff was cashier. If this bank had been appointed the statutory agent to enforce the liability of the stockholders of the insolvent corporation, it would undoubtedly have been to its advantage to secure for itself as large a percentage of the bankrupt's estate for distribution as possible. By neglecting to prove the claims of creditors of the corporation, the bank would thereby augment the ratio to which it was entitled ; and on account of its adverse interest no presumption can be indulged that it would communicate to them the knowledge of the defendant's bankruptcy which it has obtained,

and hence notice thereof would not be imputed to them. The findings do not show that plaintiff was a stockholder of the bank, and therefore indirectly interested in pursuing the course which is assumed it might have adopted, but, so far as it can be discovered, he had no personal interest either in the bank or in the creditors of the corporation, and owed to each a corresponding duty that imposed on him the obligation to disclose to the court and to such creditors the knowledge he had obtained, thereby imparting to it and them notice of the defendant's insolvency, whereby the latter's discharge in bankruptcy liberated him from their claims.

The findings of the court being sufficient to support the judgment, it is affirmed.                                  Affirmed.

---

Decided 1 February, rehearing denied 13 June, 1904.