Argued April 16, reversed May 18, 1915.

## SARATOGA INV. CO. *v.* KERN.*

(148 Pac. 1125.)

**Trial—Instruction—Weight of Evidence.**

1. Where defendant took title to land, mortgaged it, and executed a warranty deed to the president of a corporation which did not mention the mortgage, and recited an inflated consideration, it was improper, in a suit by the corporation against defendant and the president to recover damages for the act of the president in conveying the land to the corporation at an inflated price, to charge that the fact defendant took title to the property and executed a mortgage, and thereafter gave a warranty deed to the corporate president, did not show fraud, for fraud is a question of fact, which may be established by circumstantial evidence, and it is improper for the court to direct a jury as to inferences to be drawn from any particular evidence.

**Principal and Agent—Notice to Agent—Effect.**

2. The rule that a principal represented by an agent is charged with notice of matters known to the agent does not apply where the agent is acting fraudulently, and trying to overreach his principal.

[As to notice to agent as notice to principal, see note in 24 Am. St. Rep. 228.]

**Corporations—Actions Against Officers—Instructions.**

3. The president of a corporation, who was commissioned to acquire land, induced defendant to take title in his own name, to mortgage it, and to execute a conveyance to him which did not mention the mortgage and recited an inflated consideration. The president then transferred the property to corporation for an exorbitant price. Thereafter the corporation sued defendant and the president to recover damages for fraud, and the jury was charged that if the president of the corporation attended to practically all of its affairs, and that in all the dealings with defendant he was acting in his official capacity, the corporation is charged with knowledge of all acts and things done by the president, and could not complain of his conduct, but that if he was acting personally for himself, it was not charged with knowledge. *Held*, that while the instructions should be considered as a whole, it was erroneous in allowing the jury to believe

*As to how far corporation is charged with knowledge of managing officer engaged in illegal act, see note in 2 L. R. A. (N. S.) 993.

REPORTER.

that the corporation was charged with notice of the president's act, provided he was acting for it, though intending to overreach his principal.

**Corporations—Corporate Officers—Notice.**

4. While a principal is charged with notice of facts known to his agent, save where it is the duty of the agent not to disclose, or his interest is adverse to his principal, a corporation is charged with the knowledge of one of its officers, who, though acting for himself, was at the same time the sole representative of the corporation.

> [As to notice to officer of corporation as notice to corporation, see notes in 36 Am. Dec. 188; 39 Am. Rep. 322; Ann. Cas. 1915A, 855.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.     Statement by MR. JUSTICE HARRIS.

This is an action by the Saratoga Investment Company, a corporation, against C. W. Kern, Lucina Kern and Paul W. Custer.

The circumstances which gave rise to this action extend over a period of several months. Joseph Unternahrer was the owner of 160 acres of land in Clackamas County, Oregon, and in November, 1910, offered to sell the same for $5,500 to the defendant C. W. Kern, who owned an adjoining tract. Paul W. Custer, having learned that Kern had an option on the 160 acres mentioned, agreed to give the latter $6,000 for the property. Custer conceived the plan of organizing a corporation for the purpose of purchasing and handling the land and, having succeeded in interesting the necessary number of persons, in December, 1910, accomplished the formation of a corporation known as the Saratoga Investment Company, of which he was made president. The capital stock was fixed at $10,000, which was divided into 100 shares of the par value of $100 per share. Custer subscribed for 98 shares and the two remaining shares were subscribed for by two other persons. The original incorporators planned to subdivide and sell the land as soon as the

Saratoga Investment Company acquired title to the property. It was agreed that Custer would be the sole selling agent, and that he would receive as his commission one third of the proceeds derived from the sale of lots and tracts. Custer represented to the incorporators, as well as to the persons buying stock from him, that the land would cost $9,700, and by reason thereof it was agreed that he would cause the 160 acres to be conveyed free from encumbrance to the corporation in full payment for 97 shares of the stock subscribed for by him. The incorporators knew that Custer did not have any money, and they contemplated and understood that he would sell his stock and use the proceeds derived from such sales for the purchase of the land; and pursuant to such understanding Custer did sell, between December 5, 1910, and April 20, 1911, 84 shares of stock for about $8,000. Believing that Custer would complete the sale, Kern advised Unternahrer that the option on the 160 acres would be taken up, and the latter went to Portland for the purpose of closing the business. Custer was not able to raise the necessary funds and Unternahrer returned to his home in California. Thereafter, on or about April 24, 1911, Unternahrer gave and placed a deed in a bank in Portland to be delivered to Kern, who was named as grantee, upon compliance with the terms of the option. The option stipulated that if within a certain time Kern paid $2,000, then the deed should be delivered to him and he was to pay the balance in two installments of $1,000 and $2,500, respectively. Kern and Custer went to the bank on April 28, 1911, and thereupon the sum of $2,000 was paid to the bank from funds supplied by Custer and acquired by him from the sale of stock; Kern and wife signed two notes payable to Unternahrer for the balance of

the purchase price, and gave a mortgage on the 160 acres to secure the notes, one of which was for $1,000 and the other for $2,500. The deed was then delivered, either to Kern or to Custer, and the bank retained the mortgage, notes, and money for Unternahrer. The deed was filed for record on April 28, 1911, at 4:20 P. M., but the mortgage was not filed for record until Saturday, April 29, 1911, at 4:40 P. M.

Kern and wife on April 29, 1911, conveyed the land to Paul W. Custer by a warranty deed, recorded May 1, 1911, which recited that the consideration was $12,000 and made no mention of the mortgage that had been executed on the previous day by Kern and wife, although Custer did deliver to C. W. Kern a writing, together with two notes signed by Custer and payable to Kern and corresponding in amounts to the notes given by Kern to Unternahrer, which purported to protect Kern against the mortgage. When asked concerning the failure to mention the mortgage in preparing the deed, Kern testified:

"I asked Mr. Custer if the deed shouldn't show the mortgage. He said, 'No, not necessarily at all.' He says, 'Here is a memorandum agreement that I give you that shows to you and to the world that I am buying this property from you subject to this mortgage,' and he says, 'There is nothing that will be held against you in this matter.' We talked it over, and he says, 'I have notes in my possession from different individuals who have subscribed for stock in this company that will fall due long before these notes will fall due,' and he says, 'These will be taken care of.' He convinced me that was absolutely all right. I didn't know any better, so I accepted this memoranda agreement as being absolutely up and aboveboard."

Custer also stated that if the deed referred to the mortgage, it would be necessary to obtain a release

every time a lot was sold. Kern explained the amount of the consideration expressed in the deed by saying:

"When Mr. Custer said he wanted to raise the price of the property and have it show in the deed, I asked him, 'Does this cause your stockholders to pay one cent more for the property than what you are actually paying for it?' and he says, 'It does not positively.'"

Custer executed a warranty deed which named the Saratoga Investment Company as grantee, recited that $12,000 was the consideration, but made no mention of the mortgage, and at a meeting of the board of directors held on May 1, 1911, this deed was formally presented to and accepted by the board of directors as full payment for 97 shares of the stock subscribed for by Custer. Thereafter, on May 25th, the directors held a special meeting, and authorized Custer, as president, to make contracts of sale on behalf of the company, and he exercised the authority so conferred until some time in July, 1911, when he left the state. None of the stockholders knew of the mortgage until July 14, 1911, when Kern informed them of the execution of the instrument. Kern did not, at any time, hold any stock in the corporation, and he testified that he understood that the company intended to plat and sell the property, "knew that Custer was the man who represented the Saratoga Investment Company," and understood that Custer held practically all of the stock of the corporation. The stockholders left the management of the affairs of the company largely to Custer, concurred in his suggestions, and made no objection to any of his proposals. When the $1,000 note held by Unternahrer became due the amount was paid to him for the corporation, and thereafter this action was commenced

to recover, as damages on account of the mortgage, the sum of $3,500, with interest at 8 per cent from April 28, 1911.

The complaint alleges that the defendants conspired and agreed that Custer would bring about the formation of the Saratoga Investment Company, be made its president, propose and pretend that the land could be purchased for $9,700, and that the property would be purchased by him for the corporation for the sum mentioned, but with the intention on the part of all the defendants that the land would be transferred for $5,500, that the existence of the $3,500 mortgage would be concealed from the officers, directors and stockholders of plaintiff, and that the defendants would retain the difference between $9,700 and $2,000. The answer of the defendants C. W. Kern and Lucina Kern disclaims any conspiracy or fraud, and alleges that Custer was, at all times, acting as the officer of and for the corporation; that the title passed through C. W. Kern as a mere conduit at the request and for the accommodation of Custer, acting as the president and manager of the company, and that the answering defendants acted innocently without any knowledge or intimation of any fraud. Custer was not served; a voluntary nonsuit was granted as to Lucina Kern, and the plaintiff appeals from a verdict and judgment obtained by C. W. Kern.

REVERSED AND REMANDED.

For appellant there was a brief with an oral argument by *Mr. Frederic H. Whitefield.*

For respondents there was a brief and an oral argument by *Mr. L. E. Crouch.*

Department 1.  MR. JUSTICE HARRIS delivered the opinion of the court.

1. The principal assignments of error relate to the giving of certain instructions.  The jury was instructed:

"That the mere fact that C. W. Kern and Lucina Kern took title to said property and executed a mortgage for $3,500 against it and thereafter executed a warranty deed to the defendant Paul W. Custer and took back a separate agreement to the effect that Paul W. Custer would protect them against the said mortgage, that the said acts, of themselves, do not constitute fraud, conspiracy or confederacy as against the plaintiff herein.  The mere fact that they transferred this and gave a mortgage, that in itself is not sufficient; they must go further and show a conspiracy to either defraud plaintiff, or conceal this mortgage on the property from the plaintiff company."

The complaint charged fraud, and the defendant C. W. Kern was accused of being one of the actors in the conspiracy to damage plaintiff.  "Fraud is a question of fact, but it need not be shown by positive evidence, as this can seldom be done.  It is generally proved by circumstantial evidence, and may be established by inference, like any other disputed fact": *Williams* v. *North Pacific Lum. Co.,* 42 Or. 153–160 (70 Pac. 387, 390).  One of the chief purposes of the trial was to ascertain whether fraud tainted the execution of the instruments referred to in the quoted instruction, and the inquiry necessitated the determination of a question of fact which the jury alone was authorized to decide.  The law neither raised nor declined to draw an inference from the transactions alluded to by the court, and it was error to advise the jury of the effect of particular acts which, because of

the nature of the controversy, constituted the cyno-
sural facts, when there was evidence in the case which
could rightfully be considered in the same relation:
*Stanley* v. *Smith,* 15 Or. 505 (16 Pac. 174); *Patterson*
v. *Hayden,* 17 Or. 238 (21 Pac. 129, 11 Am. St. Rep.
822, 3 L. R. A. 529); *Crossen* v. *Oliver,* 41 Or. 505
(69 Pac. 308); *Kellogg* v. *Ford,* 70 Or. 213 (139 Pac.
751); *Delovage* v. *Old Oregon Creamery Co., post,*
p. 430 (147 Pac. 392).

2, 3. The main question presented by the appeal
hangs around the next assignment of error. The jury
was told that knowledge acquired by an agent while
transacting the business of his principal operates con-
structively as notice to the principal, but that such
notice has no application when the agent acts for him-
self, in his own interest, and adversely to that of his
principal; that although the company would ordinarily
be charged with whatever notice or knowledge Custer
had if he was president and manager and in full
charge of the affairs of the Saratoga Investment Com-
pany, nevertheless if he so dealt with his company
that he had an interest adverse to the corporation,
then his knowledge would not be notice to the com-
pany, and if C. W. Kern dealt with Custer in such
manner that the former knew, or by the exercise of
reasonable diligence could have known, that Custer
was dealing for himself and not as the agent of the
company; and thereafter the court charged the jury
as follows:

"You are instructed that if you find from the evi-
dence that the defendant Paul W. Custer was the
president of the plaintiff corporation, and as such
president attended to practically all of its affairs and
was the moving spirit of said corporation, and that in
all of the dealings of the defendant C. W. Kern with

said Paul W. Custer he was acting in his capacity as president of the said corporation, the plaintiff corporation thereby acquired notice of all the acts and things done by said Paul W. Custer in the transaction of the purchase of said land by, through, and from the defendant C. W. Kern, and that in that event the plaintiff cannot complain of the acts of its president, and you should find in favor of the defendant C. W. Kern. In other words, if you find that Custer was acting as president, not in his individual capacity—that he was buying for the company in his official capacity—then you cannot find against Kern. If he was acting personally for himself, then it would charge the defendant Kern; if acting as president, and representative of the company, it would not charge the defendant Kern.''

While a charge to a jury should always be considered as a whole and never viewed hypercritically, still the quoted instruction as given may easily have misled the jury to believe that if Custer acted as the agent of the corporation, such circumstance alone and of itself would have warranted a verdict for the defendant Kern. The triers of the facts were unqualifiedly advised to find for Kern if Custer, in his dealings with the former acted as president of the corporation. If Kern agreed with Custer to accomplish the fraud charged in the complaint, then Kern would be liable regardless of whether Custer acted for himself or as the agent of the corporation. The doctrine of notice in all its phases, when applied to a principal who has been represented by an agent in a transaction with another, is designed to protect the innocent and not shield a wrongdoer; and the instruction should have been so qualified as adequately to inform the jury that if Kern conspired to defraud the plaintiff, then, in such event, the agency of Custer would be of no avail: Mechem on Agency (2 ed.), § 1826; 2 C. J. 871.

4. The errors already pointed out are such as to require a new trial, and on that account some notice should be taken of another feature of the case which was productive of much debate between counsel. The defendant argues that Custer was intrusted with the general management of the affairs of the company, and for all practical purposes was the corporation, that he was the sole representative of the company, and that therefore notice to him was notice to the corporation, even though Custer acted adversely to his principal or perpetrated an independent fraud upon it. The plaintiff asserts that the general rule, making notice to the agent notice to the principal, has its exceptions, one of which exists where the agent has an adverse interest, and another where he seeks to work a fraud upon the principal. The plaintiff insists that there are no qualifications or limitations placed upon the recognized exceptions to the general rule, and that therefore notice is not imputed to the corporation where the agent of such principal has an adverse interest, even though acting as the sole representative of the corporation. The rule of imputed notice, when considered with relation to the facts connected with the instant case, naturally presents itself in two aspects: (a) As applied to the business directly transacted between Custer and Kern; and (b) as applied to the delivery and acceptance of the deed from Custer to the Saratoga Investment Company. All the courts do not predicate the doctrine of constructive notice, in cases of agency, upon the same theory. In some jurisdictions the rule is made to depend upon the theory of identification whereby the agent is deemed to be the *alter ego* of the principal; and in this, as perhaps in the majority of jurisdictions, the same conclusion is reached by declaring that the agent is pre-

sumed to have performed his duty by communicating his knowledge to the principal: *Dight* v. *Chapman,* 44 Or. 265 (75 Pac. 585, 65 L. R. A. 793). Stated in broad terms the general rule is that:

"Notice to an officer or agent of a corporation, in due course of his employment, and in respect to a matter within the scope of his authority, or apparent authority, concerning affairs of such character that it becomes his duty to communicate the information to it, is notice to the corporation, whether he imparts to it such information or not": *Dillard* v. *Olalla Min. Co.,* 52 Or. 132 (94 Pac. 966, 96 Pac. 678); *Wood* v. *Rayburn,* 18 Or. 18 (22 Pac. 521); *Rayburn* v. *Davisson,* 22 Or. 246 (29 Pac. 738); *Hoffman* v. *Habighorst,* 49 Or. 386 (89 Pac. 952, 91 Pac. 20); *Pennoyer* v. *Willis,* 26 Or. 1 (36 Pac. 568, 46 Am. St. Rep. 594).

There is a marked divergence of judicial opinion upon the question of whether or not the previously acquired knowledge of the agent is imputable to the principal. In conformity with the present English rule and in harmony with the weight of judicial utterance, this court, speaking through Mr. Justice BURNETT, in *Oliver* v. *Grande Ronde Grain Co.,* 72 Or. 46 (142 Pac. 541), has approved the language found in *The Distilled Spirits,* 11 Wall. 356 (20 L. Ed. 167), and reading thus:

"The doctrine now seems to be established that if the agent, at the time of effecting a purchase, has knowledge of any prior lien, trust or fraud, affecting the property, no matter when he acquired such knowledge, his principal is affected thereby. If he acquire the knowledge when he effects the purchase, no question can arise as to his having it at that time; if he acquired it previous to the purchase, the presumption that he still retains it, and has it present to his mind, will depend on the lapse of time and other circumstances. Knowledge communicated to the principal

himself he is bound to recollect, but he is not bound by knowledge communicated to his agent, unless it is present to the agent's mind at the time of effecting the purchase. Clear and satisfactory proof that it was so present seems to be the only restriction required by the English rule as now understood.''

See, also, *Farmers' Bank* v. *Saling,* 33 Or. 394 (54 Pac. 190); *Wood* v. *Rayburn,* 18 Or. 3, 18 (22 Pac. 521); *Rayburn* v. *Davisson,* 22 Or. 242, 246 (29 Pac. 738); *Pennoyer* v. *Willis,* 26 Or. 1, 8 (36 Pac. 568, 46 Am. St. Rep. 594). The exceptions making the rule of imputed notice unavailable are: (a) Where it is the duty of the agent not to disclose, as in the case of privileged communication; and (b) where the agent's relations to the subject matter are so adverse as to practically destroy the relationship, as when the agent is acting in his own interest and adversely to that of his principal, or is secretly engaged in attempting to accomplish a fraud which would be defeated by a disclosure to his principal: 2 Mechem on Agency (2 ed.), § 1813; 2 C. J. 869; *Dight* v. *Chapman,* 44 Or. 265 (75 Pac. 585, 65 L. R. A. 793).

A situation may be presented in a business transaction for a corporation, however, where the second exception mentioned may be nullified, thereby restoring the general rule in its entirety and with unimpaired vigor. If the officer of a corporation, although acting for himself or a third person, is at the same time the sole representative of such principal, and with full authority as such officer he alone transacts for the corporation some business, then the knowledge of the agent is imputed to the principal: *Weber* v. *Richardson,* 76 Or. 286 (147 Pac. 522); *McKenney* v. *Ellsworth,* 165 Cal. 326 (132 Pac. 75). Many authorities are collected and classified in a note to *Brookhouse* v.

*Union Publishing Co.*, as reported in 2 L. R. A. (N. S.) 993.   Professor Mechem sustains the rule by applying the doctrine of ratification, and says:

"The real ground upon which this situation rests is believed to be that already stated, namely, that where the agent is the sole representative of the corporation, the corporation cannot claim anything except through him, and that therefore if it claims through him, after notice of the facts, it must accept his agency with its attendant notice": 2 Mechem on Agency (2 ed.), § 1825.

The judgment is reversed and the cause remanded for a new trial.   REVERSED AND REMANDED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON concur.

---

Motion to dismiss appeal denied July 21, 1914.
Argued on the merits February 9, reversed March 2, rehearing denied May 25, 1915.