McConnell vs. Hughes and husband.

McConnell, Appellant, vs. Hughes and husband, Respondents.

*September 1 — September 27, 1892.*

*Fraudulent representations: Tax titles: Nonsuit.*

1. The complaint alleges that defendants, by fraudulently representing that one of them had a good tax title to land and that the former owner had died leaving no minor heirs, induced the plaintiff to purchase the land and pay $500 therefor; that afterwards, in an action by minor heirs of said former owner, the tax deed and the conveyance to plaintiff were declared void; and that plaintiff had incurred expenses in said action, and had paid a judgment against him for damages and costs therein. Judgment is demanded for the amount of such expenses and judgment, and for the purchase money paid by plaintiff. *Held,* that the action is to recover damages for the fraud, and not to rescind the contract of sale.

2. The tax deed, being valid on its face and having been recorded more than three years before the action by the minor heirs was commenced, could have been avoided for irregularities only by such heirs; and it was error therefore to nonsuit the plaintiff in this action on the ground that the tax deed was void because of defective notices of the sale, etc.

3. So, also, it was error to nonsuit the plaintiff on the ground that the tax deed was void because the purchaser at the tax sale was an attorney employed to pay the taxes, and because of fraud and collusion of defendants and others whereby more land was embraced in said deed than was sold. Such breach of trust and collusion could not be made available as a defense to the fraud alleged in this action.

APPEAL from the Circuit Court for *St. Croix* County.

Anthony Suitor died at his residence in Oskaloosa, Iowa, intestate, February 3, 1878, seised of 160 acres of land in

the town of Rush River, St. Croix county, described as the S. E. ¼ of section 24. He left him surviving a widow, Magdeline, and four children, to wit, Martha, born February 16, 1865; Ellen, born December 4, 1866; Louis, born February 20, 1869; and Isabella, born June 14, 1872. On February 14, 1878, W. R. Nugent was appointed administrator of the estate of said Suitor, and duly qualified as such, and on August 26, 1878, said Nugent was appointed guardian for said four minor heirs, and qualified as such. Soon after, said Nugent, as such guardian and administrator, employed J. S. Moffat, of St. Croix county, as attorney to take charge of and look after said land, and see that the taxes thereon should be paid in due season. Said Moffat neglected such duty, and allowed said land to be sold for taxes in May, 1881, 1882, 1883, and 1884, and bid in the same, and took the several tax certificates in his own name. On August 9, 1882, said Martha Suitor married one John H. Haney.

On March 10, 1884, this plaintiff, *Anthony McConnell*, wrote said Moffat to the effect that he had ascertained that he held such tax certificates and would be entitled to a tax deed May 16, 1884, and expressing a desire to buy the tax certificates or the land when he obtained a tax deed. Moffat thereupon assigned the tax certificate on the sale of 1881 to his daughter, the defendant *Mary M. Hughes*, and on May 19, 1884, she, through said Moffat, obtained a tax deed of said premises on such certificate, and the same was, on May 24, 1884, duly recorded, and thereupon and on the same day the said *Mary M.* and *Thomas Hughes* made an agreement to sell said land to the said *McConnell*, in consideration of $500 to be paid, and thereupon quitclaimed the same to said *McConnell* by deed reciting such consideration. On April 17, 1885, the said Magdeline Suitor married one John Nagle.

On May 18, 1885, said Nugent, discovering that said land had been sold for taxes as mentioned, deposited the money

to redeem the same, as prescribed by sec. 1166, R. S., and took the usual redemption receipt therefor. On November 3, 1887, said Nugent demanded a quitclaim deed of said premises, and tendered to *McConnell* the amount he had paid for taxes thereon and interest, which he declined to accept. Thereupon the said Louis and Isabella Suitor as such minors, by their said guardian, and the said Ellen Suitor and Martha and John H. Haney, and Magdeline and John Nagle commenced an action against said John S. Moffat, *Mary M.* and *Thomas Hughes*, and said *Anthony McConnell*, to set aside said tax deed and quitclaim deed. Within twenty days thereafter said *McConnell* gave notice to the said *Mary M.* and *Thomas Hughes* to defend said action and his said title. Said *McConnell* appeared, and by his attorneys, Bashford & Disney, answered in said action, and the said Moffat and *Mary M.* and *Thomas Hughes* appeared by their attorney, Humphrey, and separately answered therein.

The trial of said action resulted in findings, filed July 3, 1889, to the effect that the notice of the tax sale, May 17, 1881, as required by sec. 1130, R. S., was only published commencing April 8, 1881, and ending April 29, 1881; that on the sale thereof only nine acres of the north side of each forty were sold to said Moffat; that in pursuance of an understanding between him and said *Hughes* and other bidders and the county treasurer, they refused to accept the land so bid off on said sale, and thereupon, without adjournment, and on the next day, May 18, 1881, the treasurer resold the whole of said land to said Moffat; that the notice required by sec. 1170, R. S., was only published commencing August 3, 1883, and ending November 2, 1883, for the issuance of the tax deed May 19, 1884; that May 18, 1885, Nugent redeemed from all of said tax sales as mentioned. As conclusions of law the court found that said tax deed and said quitclaim deed were void, and dismissed the com-

plaint therein as to Moffat and *Mary M.* and *Thomas Hughes*, without costs, but found that the plaintiff was entitled to judgment against said *McConnell* for $12 damages for timber removed from said premises, and for costs, in all amounting to $129.14.

On October 5, 1889, the plaintiff, *Anthony McConnell*, commenced this action against the said *Mary M.* and *Thomas Hughes* and the complaint herein alleges that in making said purchase from the said *Mary M.* and *Thomas Hughes* to him the said plaintiff, the said *Thomas* acted as agent for the said *Mary M.;* that the facts were, in effect, as stated; and further alleges that the said defendants and the said *Thomas*, as such agent, falsely represented to the said *McConnell* that the said *Mary M.* had a good and perfect title to said premises, and that said Anthony Suitor was dead, and had left no minor heirs, but only a widow who had been married several years; and that the said Thomas and *Mary M.* knew such representations to be false at the time they were made; that the plaintiff, relying upon said representations, was induced to pay, and did pay on said purchase, in June, 1884, $504.50; that the said plaintiff had also paid the said prior judgment, with interest, in said former action, amounting to $131.55; that he had expended for counsel fees and costs in said action, $212; that he had lost time in and about the same to the value of $40; which several sums, with interest, amounted in the aggregate to $1,152.91, for which amount he demanded judgment. The defendants answered, and upon the trial, November 19, 1890, and upon the facts proved substantially as stated, the court granted a nonsuit, and judgment of nonsuit was thereupon entered, with costs taxed at $62.16. From that judgment the plaintiff appeals.

The cause was submitted for the appellant on briefs by *R. H. Start*, and for the respondents on the brief of *H. L. Humphrey* and *Baker & Helms*.

CASSODAY, J.   It is true, as contended by counsel for defendants, that a party cannot maintain an action to rescind a contract in part, on the ground of fraud, and at the same time affirm the residue under which he has taken a benefit. *Hendricks v. Goodrich*, 15 Wis. 679; *Grant v. Law*, 29 Wis. 99; *Zitske v. Goldberg*, 38 Wis. 223; *Hyslip v. French*, 52 Wis. 516; *Hoffman v. King*, 70 Wis. 381.   This, however, is not such an action, although the brief of the plaintiff's counsel seems to so designate it.   From a careful examination of the complaint we are convinced that it is an action for damages by reason of the frauds alleged.

In granting the nonsuit the trial judge, among other things, in effect said that there was plenty of evidence tending to prove that *McConnell* was induced to make the purchase and pay his money by false representations knowingly made by *Mr. Hughes;* that it appeared upon the trial that the tax deed was "utterly void, not only for the reason that there were minor heirs, but for the further reason that the same was made in a manner entirely illegal, and almost scandalously so, in defiance of all rules concerning those things."   There is evidence tending to prove that the representations so made by *Hughes* to induce *McConnell* to make the purchase were to the effect that the title of *Mrs. Hughes* from the county was perfectly good; that her right and title to the land was all straight; that the tax sale from the county, upon which the tax deed issued, was good; that the original owner, Suitor, left no minor heirs him surviving, nor any claimants that would interfere with his title.

The court appears to have granted the nonsuit on the ground that the tax deed was utterly void for two reasons, *dehors* such representations; and hence that *McConnell* never would have acquired a good title under it, even had such minor heirs never redeemed, as mentioned in the fore-

going statement. One of such reasons is that the publication of the notice of sale required by sec. 1130, R. S., and the notice to redeem required by sec. 1170, R. S., mentioned in said statement, were both short. The tax deed appears to have been valid upon its face, and hence, upon being recorded, it put the constructive possession of the land in *Mrs. Hughes*, and the plaintiff as her grantee. Such short notices were not errors or defects " going to the validity of the assessment, and affecting the groundwork of the tax," so as to bring those claiming under the original owner within the one year statute of limitations. Sec. 3, ch. 309, Laws of 1880; sec. 1210*h*, S. & B. Ann. Stats.; *Urquhart v. Wescott*, 65 Wis. 135; *Morrow v. Lander*, 77 Wis. 77. That tax deed was recorded May 24, 1884, and the action to set aside the same by those claiming under the original owner was not commenced until after November 3, 1887, which was considerably more than three years after the tax deed was so recorded. The statute then in force, as now, expressly provides that " no action shall be maintained by the former owner, or any person claiming under him, to recover the possession of any land or any interest therein which shall have been conveyed by deed for the nonpayment of taxes, or to avoid such deed, against any person claiming under such deed, unless such action shall be brought within three years next after the recording of such deed." Sec. 2, ch. 309, Laws of 1880; sec. 1188, S. & B. Ann. Stats. After the statute of limitation has thus run in favor of a tax deed, evidence of mere irregularities in levying the taxes, making the sales, or issuing the tax deed, is inadmissible to support the title of the original owner or any one claiming under him; since all such defects are cured by such statutes. *Dupen v. Wetherby*, 79 Wis. 203. But such statute of limitation did not run against the minor heirs at law of the original owner, for the reason

that they are expressly excepted from the operation of such statute.   The redemption by the minor heirs, May 18, 1885, under sec. 1166, R. S., as mentioned in the foregoing statement, operated to free and discharge the land from the tax deed, at least so far as their rights, title, and interests therein were concerned.

The other reason suggested by the trial judge for holding such tax deed utterly void, *dehors* such false representations, is the breach of trust by Moffat as attorney for the guardian of said minors, and the collusion between him and the defendants and the county treasurer, whereby the tax deed was for the entire quarter section, instead of being for the small fraction which was sold as mentioned in said statement.   But such breach of trust and collusion certainly cannot be made available as a defense to the fraud alleged, and which there is evidence tending to prove.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.