# CHARLESTON.

THE AMERICAN NATIONAL BANK OF BLUEFIELD v. RITZ.

Submitted June 2, 1910.   Decided February 27, 1912.

BANKS AND BANKING—*Functions and Dealings—Representation by Officer—Notice.*

    Knowledge by one of the officials of a bank, acquired in a capacity other than as its representative, relating to infirmity in commercial paper offered for discount, is not notice to the bank when that official is also an officer of the corporation seeking the discount and has an interest in the transaction so adverse to the bank that the reasonable presumption is that he would not communicate the knowledge to it.

(BRANNON, PRESIDENT, absent.)

Error to Circuit Court, Mercer County.

Action by the American National Bank of Bluefield against Harold A. Ritz. From a judgment for defendant, plaintiff brings error.

                          *Reversed and New Trial Awarded.*

*Sanders & Crockett,* for plaintiff in error.

*A. W. Reynolds, D. E. French, John M. McGrath* and *Russell S. Ritz,* for defendant in error.

ROBINSON, JUDGE:

By this action in debt, the plaintiff bank seeks to recover from defendant the amount of two negotiable notes which he endorsed. The notes were made by the Southern West Virginia Fuel Company, and were discounted by the plaintiff for the benefit of that company.

  Fowler, at whose request defendant endorsed, was president of the fuel company, and also president of the bank—a director in both corporations. Defendant also was a director in both corporations.

Defendant filed a special plea in which he avers, substantially, that he was merely an accomodation endorser of the notes at the request of Fowler as president of the fuel company; that Fowler represented to him that the company was sorely in need

of funds and money must be raised for its use by discounting notes; that he signed the notes with a distinct agreement between himself and Fowler that the other directors of the company would endorse them before they were discounted; that it was also agreed that the notes should not be used until a writing was signed by all the endorsers stipulating that the directors of the company as endorsers were liable only in proportion to their stock; that such a writing was prepared by defendant and was signed by him, Fowler and Shands; that Fowler was to obtain the signatures of the other directors to this writing as well as to the notes; that, notwithstanding these agreements, Fowler had the notes discounted at the bank, endorsed only by himself, the defendant and Shands, without the endorsement of the four other directors and without securing these others to sign the writing relating to the extent of liability; and that, at the time the notes were discounted, the bank had notice of these agreements in the premises and was therefore advised of the infirmity of the paper in relation to defendant when it became the holder of the same.

A trial by jury resulted in a verdict and judgment for defendant. Plaintiff, by writ of error, comes seeking a reversal.

Defendant rests his case on the assertion that the bank had notice of the infirmity in the paper through the knowledge of Fowler, its president and managing officer. That knowledge, it will be observed, Fowler obtained as an officer of the fuel company.. It did not come to him as an officer of the bank.

An instruction was given on behalf of defendant over the objection of plaintiff. It is as follows: "The court instructs the jury that if they believe from the evidence in this case that William E. Fowler was President of the American National Bank, the plaintiff in this case, and that he agreed with the defendant that the notes sued on in this case, or the notes for which said notes, or either of them, is a renewal, should not be discounted at said bank until they had been endorsed by William E. Fowler, William Shands, J. Lee Harne, S. M. Smith, W. P. Hawley, F. L. Black and the defendant, Directors of the Southern West Virginia Fuel Company, and that said notes should not be discounted at said Bank until the written agreement introduced in evidence in this case had been signed by all of

said directors of the Southern West Virginia Fuel Company, and if the jury further believe from the evidence in this case that the said William E. Fowler violated the said agreement with the defendant by causing the said notes to be discounted and the amount thereof placed to the credit of the said Southern West Virginia Fuel Company without the endorsements of all the persons aforesaid and without all of said persons having signed the said contract in accordance with the said agreement, then the jury shall find for the defendant." Plainly, this instruction assumes that the knowledge which Fowler had of the agreement that the notes were not to be delivered until the proposed endorsements and signatures were obtained was notice to the bank of which he was president. Was the trial court justified in thus virtually assuming as matter of law that notice to Fowler was notice to the bank?

It does not appear that the exclusive management of the bank had been committed to Fowler. No resolution of the directors or long existing custom held out to the public establishes that he had the power to act absolutely in behalf of the bank. It is not shown that he alone was the bank, so that there could be no other channel of notice to it. On the other hand it appears that the bank had a full board of directors. It is not proved that they were so derelict in their duties that those duties necessarily passed to Fowler. We must assume that they were managing the bank as the law required them to do, since it does not appear that they were not. Besides, the bank had an active cashier, who was also a director. We must assume that he exercised his powers as a director and as the cashier. The identity of Fowler and the bank were not the same. He was not the bank—he was merely one of its agents. So there were others entitled to information in the affairs of the bank . There were other officers to whom it was Fowler's duty to communicate knowledge received by him affecting the bank, and to whom it must ordinarily be presumed he would communicate such knowledge. They had the power to disapprove his acts.

The general rule that knowledge or notice on the part of the agent is notice to the principal is based on the duty of the agent to communicate all material information to his principal and the presumption that he has done so. In short, this rule rests

on the presumption that the agent will do his duty to the principal by communicating material information to the latter. The rule cannot stand without this presumption. In this case, the presumption does not arise. It is not to be presumed that Fowler communicated to the other officers of the bank the knowledge which he had as to the infirmity in the notes. It was to his interest to remain silent. He was president of the corporation which needed the funds by a discount of the notes. He was acting for an interest which was adverse to the interest of the bank. So an exception to the general rule applies. That exception prevails "in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the agent acts for himself in his own interest and adversely to that of the principal." 1 Am. & Eng. Enc. Law 1145. "No agent who is acting in his own antagonistic interest or who is about to commit a fraud by which his principal will be affected does in fact inform the latter, and any conclusion drawn from a presumption that he has done so is contrary to all experience of human nature." *Gunster* v. *Scranton, etc., Co.*, 181 Pa. 327.

Defendant was a director of the bank and of course knew that Fowler was also a director and the president. He also knew that Fowler in the particular transaction of the discount of these notes had an interest adverse to the bank. Defendant, therefore, could not rely on the mere knowledge which Fowler had received in a transaction outside of his line of duty as a bank official as being notice to the bank. He was bound to observe that this knowledge was not the kind of notice to an officer that is directly imputable to the bank in any event, but that to make it notice there must be a presumption that Fowler would communicate it to the bank. He could not rely on such a presumption, for he well knew Fowler's adverse interest. Under such circumstances he should have given direct notice to the bank, if he desired to protect himself. He should have given notice that would be presumed to reach the bank. Instead, defendant in fact constituted Fowler as his agent to see the notes perfected and the writing fully signed, entrusting that agent with negotiable instruments which he could pass to an innocent holder and thereby bind defendant. If there is loss

should it not fall on defendant? He should have observed that he placed Fowler in a position to have the bank innocently part with its funds on the faith of paper that appeared sound on its face. True, the best of men sometimes neglect. But duty to himself, as well as the duty to the bank of which he was a director, demanded that he do more for the protection of both himself and the bank than he did. Applicable to this case are the following: "If the third person has notice of the agent's adverse interest in a former transaction in regard to which the agent was acting not for the bank, and the knowledge gained in such·a transaction is such that needs to be communicated to the bank in order to bind it, that is to say, if it is knowledge acquired by the officer outside of his duties, there will be no presumption of a communication where the officer has an interest or a duty in concealing the matter." Zane on Banks and Banking, sec. 112. "If the third party, C., knows that A. has an adverse interest tending to cause him to withhold his knowledge from B. the bank, C. has no right to regard A. and B. as identical in the transaction, and cannot hold B." Morse on Banks and Banking, sec. 106.

It is submitted that the evidence shows that the board of directors did not pass the discount of the notes, but that the same was done by Fowler alone. That cannot alter the case. They could have overthrown his act. Though Fowler took the paper from himself into the bank, it must be presumed that the other officials who were disinterested and qualified to act on that paper acquiesced in his action only because they had no notice of the infirmity in the notes. It is not reasonable to think that these disinterested officials would have silently approved his action if they had known what he knew about the paper. These disinterested officers of the bank received the paper as regular and valid. Defendant cannot rely, as he undertakes to do, on a conduit of notice that did not lead to the real entity—the bank itself through its disinterested officers. To hold that Fowler as president acted alone for the bank and that he had absolute power to bind it for his own private interests or those of a company in which he was privately interested, notwithstanding there were other officials of the bank who naturally would have intervened in its behalf if the knowledge which he possessed

had been known to them, would mean no regard for the interests of depositors and stockholders.

In the transaction of the discount of the notes, Fowler was acting really not for the bank but for other interests—those of the fuel company. The directors who permitted the paper to remain as the property of the bank acted for it. Fowler's interest was so adverse to the bank that he was disqualified from representing it. A reputable authority says: "When an agent of a corporation himself contracts with the company, or otherwise deals with it in a transaction in which his interests are opposed to the interests of the company, his knowledge will not be deemed the knowledge of the company as to matters connected with the transaction; for the agent could not represent the company in such a transaction. So if a person is an officer of two companies, and these companies enter into dealings with each other, the knowledge of the common officer cannot be attributed to either company in a transaction in which he did not represent it." 1 Morawetz on Private Corporations (2nd ed.) sec 540c. And says Mr. Justice Mitchell in *Gunster* v. *Scranton, etc., Co., supra*: "If it be urged, as in some cases, that the principal having put the agent in his place should, as a matter of public policy, be held answerable for all the latter does, a sound answer is suggested by the court in *Allen* v. *So. Boston R. R.,* 150 Mass. 200, 206, that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and bears analogy to a tort wilfully committed by a servant for his own purposes, and not as a means of performing the business intrusted to him by his master."

By claiming the notes and suing on them, the bank did not adopt Fowler's act in discounting the notes with notice. All that the bank adopted of his act is what it knew of the act. As far as it appeared to the bank, the notes which Fowler passed into the bank as agent of the fuel company and received as agent of the bank were entirely regular and valid. The bank took the notes as paper of that character. Why should its insistence for payment charge it with an adoption it never intended to make—one that in reason cannot be imputed to it?

The giving of the instruction for defendant was error. The instructions requested by plaintiff properly presented the law

·of the case, in view of the evidence. We deem it unnecessary to discuss plaintiff's objection to the special plea, based on the ground that proof under it violates the rule that parol evidence is not admissible to change a written contract. It suffices to say that proof of the plea is admissible.

The judgment will be reversed, the verdict set aside, and a new trial awarded. Plaintiff asks for judgment here, but it does not plainly appear that defendant cannot make a different case at another trial. He may be able to prove notice.

*Reversed, and New Trial Awarded.*