Mills and wife, Respondents, vs. Morris, imp., Appellant.

*January 16—February 3, 1914.*

*Cancellation of instruments: Purchase-money mortgage: Fraud: Failure of title: Defenses: When cause of action accrues: Contracts: Rescission in part: Equity: Appeal: Harmless errors.*

1. In an action to cancel a note and a purchase-money mortgage because of the failure of title to a part of the mortgaged lands which plaintiffs had purchased relying upon fraudulent representations by the mortgagee and defendant as to the death of the real heir thereto, such fraud having been established, the exclusion of evidence as to the true consideration for the note and mortgage was unimportant because, regardless of what the consideration was, it was not a defense.

2. If plaintiffs, having no knowledge that the real heir was alive, were induced to purchase the land in question by fraudulent representations of the vendor and defendant that such heir was dead or at least had not been heard from for ten years, the mere fact that they would not purchase without some reduction being made in the price as security against the remote chance of the heir being alive, would not prevent them from rescinding the sale because of such fraud.

3. There having been an absolute failure of title to the land as to which rescission was sought, the grantee was not required to wait until actually dispossessed before instituting such action.

4. The doctrine that one cannot affirm in part a contract or transaction tainted with fraud, and maintain an action for rescission as to the other part, is not without exceptions. The rule is equitable and ceases to operate where equity requires that it do so.

5. One may retain the benefit of a contract or transaction and yet sue for damages on account of a breach affecting it in part, or may affirm in part and rescind in part, obtaining a proportionate rebate in the purchase price, where some such course is necessary to conserve the real right of the matter.

6. Two tracts of land were conveyed by warranty deed to plaintiffs. The grantor was not the rightful owner of one of them, but had by false testimony as to the death of the real heir obtained a decree of the county court assigning it to her, and by similar false representations induced plaintiffs to purchase it with the other tract; and for a part of the whole purchase money about equal to the value of the tract which she did not own they gave to her a mortgage on both tracts. Afterwards the grantor died, having in the meantime transferred the mortgage to defendant, who had assisted in making the sale and had participated in the fraud. *Held*, that when the real heir appeared and claimed the tract rightfully belonging to him plaintiffs could, upon offering to surrender that tract to him, maintain an action to rescind the sale as to that tract and to cancel the mortgage as a cloud upon the title to the other tract.

APPEAL from a judgment of the municipal court of Outagamie county: THOMAS H. RYAN, Judge. *Affirmed.*

Action to cancel the record of a mortgage, a $2,200 note on the ground of fraud and to declare the same and the note given therewith void.

Charles S. Spaulding, in the town of Maine, Outagamie county, Wisconsin, in 1904, died intestate, possessed of title to lands covered by the mortgage sought to be canceled. He left surviving, his widow, Icybinda Spaulding, who was a second wife and defendant Hiram A. Spaulding, a son by a former marriage. Mr. Spaulding had not seen his son for many years. Administration of his estate was, in due form, and time, granted to the widow, she representing that the stepson had not been heard of for some ten years. In due course she filed her final account and secured a final order, in form, continuing title in her to said lands. Such order was entered upon her representations that Hiram was last heard from in British Columbia, some ten years theretofore;

that her deceased husband neither saw nor heard from his son but once after the latter's boyhood, that being by letter which was answered, and that the general belief was that he was dead since no one, so far as known, had seen or heard from him in over ten years. The final order was duly recorded in the office of the register of deeds of Outagamie county, Wisconsin. Hiram was then thirty-nine years of age, had been married some ten years, and was the father of several children, photographs of which were in possession of Mrs. Spaulding before her death, if not before she made the representations aforesaid. All the facts stated were as well known to defendant *Addie Morris,* who was a sister of Mrs. Spaulding, as to the latter. Mrs. Spaulding owned a tract of land adjoining that in question, both of which tracts were occupied by her as a home and were so occupied in the lifetime of her husband. February 28, 1910, she sold both tracts and conveyed the same by deed with full covenants to plaintiffs; the consideration being $3,700, $1,500 being paid at the time of the transfer and payment of the balance being evidenced by the note and secured on the land by the mortgage in question. The mortgage was duly recorded. Three thousand seven hundred dollars was the reasonable value of all the land and $2,200 of the tract which Mrs. Spaulding obtained through her deceased husband. She, in the transaction with plaintiffs, acted wholly through *Mrs. Morris,* who represented in the negotiations, that Mr. Spaulding's son was adjudged in the county court proceedings aforesaid to be dead; that Mrs. Spaulding had and could convey a good title. Plaintiffs, in making the purchase, relied on such representations and the order of the county court. October 6, 1910, Mrs. Spaulding assigned the note and mortgage to *Mrs. Morris* in consideration of $1 and other good and valuable considerations. Mrs. Spaulding had other property but it all came to the possession and under the control of her sister *Addie.* Thereafter Mrs. Spaulding died, intestate. No con-

sideration was in fact given by *Mrs. Morris* for the note and mortgage. When she took the assignment she knew all the facts affecting the title to the land covered by it and was as guilty as Mrs. Spaulding as regards making false representations respecting the existence of Hiram. She was not a *bona fide* purchaser of the note and mortgage. Plaintiffs' title to the Charles S. Spaulding land wholly failed by reason of it appearing that such land belonged to Hiram. They have been damaged thereby in the sum of $2,200. Before the commencement of this action Hiram appeared and demanded possession of his land. The total damage to plaintiffs by the failure of the title is $2,494.80.

On such findings it was held that, as matter of law, Hiram Spaulding was the owner of the land covered by the mortgage, free from any incumbrance created thereby, notwithstanding the order of the county court giving Mrs. Spaulding the appearance of having come into a good title thereto; that a fraud was committed on Hiram Spaulding and upon plaintiffs in which Mrs. Spaulding and *Mrs. Morris* were participants; that the note and mortgage are void and should be canceled.

Judgment was rendered accordingly.

The cause was submitted for the appellant on the brief of *Humphrey Pierce,* and for the respondents upon that of *John Bottensek.*

MARSHALL, J. This case does not seem to present any difficulty warranting extended treatment. It cannot well be contended, and is not, that the facts found do not support the judgment. The point made that some material findings are not supported by the evidence, is ruled to the contrary by the familiar principle giving efficiency to trial determinations of issues of fact where there is a fair basis in the evidence therefor.

The point made that the court improperly excluded evi-

dence respecting the true consideration for the note and mort-
gage is unimportant because, regardless of what the consid-
eration was, it is not a defense to the case made showing that
Mrs. Spaulding and *Addie Morris* colluded together to save
the land for the former, knowing that it belonged to Hiram.

The point made that the price of the land, when conveyed
to respondents, was reduced some $300 because of the remote
chance of Hiram being alive and appearing upon the scene
to claim his rights, is likewise unimportant.   Respondents,
in any event, had no knowledge of the existence of Hiram.
and were led, by Mrs. Spaulding, through her representa-
tives, and doubtless by her connivance or consent, to believe
that Hiram was dead, or at least had not been heard from
for more than ten years, which they knew was false.   The
fact that, in face of representations which might well have
created in the mind of an ordinary careful person the impres-
sion that Hiram was dead,—plaintiffs would not accept a
conveyance with full covenants without some reduction of the
purchase price of the land as security against the remote
chance of Hiram having been alive at the time of the death
of his father, plainly shows that the sale, even with the small
rebate in price, was accomplished by false pretenses which,
according to the findings, *Addie Morris* was just as guilty of
as Mrs. Spaulding, if not more so.

There having been an absolute failure of title to the lands,
plaintiffs were not required to wait until dispossessed before
seeking a remedy to prevent the wrong to them becoming
remediless.

The doctrine that one cannot affirm in part and bring an
action for rescission in part, but must treat the tainted con-
tract as an entirety, upon which appellant's counsel relies,
citing *Grant v. Law,* 29 Wis. 99, is familiar.   It is good in
its place.   It has several exceptions which are not mentioned
or recognized in *Grant v. Law.*   So, though the case was

rightly decided, the opinion is rather misleading, as clearly shown in *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571.

Though, in general, one may not affirm in part and rescind in part, the rule is equitable and ceases to operate where equity requires it to do so, as indicated in *Gay v. D. M. Osborne & Co.* 102 Wis. 641, 78 N. W. 1079; *Ludington v. Patton, supra,* and other cases. One must distinguish between situations where equity requires the rule to apply and where it requires an exception; and also between an action for rescission and one based on rescission; also between an action for rescission and an action to prevent injury where rescission would not furnish an adequate remedy. One may retain the benefit of a contract and sue for damages because of a breach affecting it in part (*McConnell v. Hughes,* 83 Wis. 25, 53 N. W. 149), or affirm in part and rescind in part, obtaining a proportionate rebate in the purchase price, where some such course is necessary to conserve the real right of the matter. *Gay v. D. M. Osborne & Co., supra.* The court there said:

"The right of rescission of a contract for fraud, though a legal right, is based on equitable principles. Therefore the requisites of its exercise should go no further than strict compliance with the dictates of good conscience requires. For that reason the exception to the rule of total rescission indicated has become a part of our jurisprudence."

A proper conception of the real ethics of the law will enable one to perceive that rules are based on principles of justice and are limited by the effects in that regard. Therefore, when it is said that application of a rule to a particular situation would work injustice instead of justice, especially where the controversy is being dealt with in equity, wisdom will lead one to search for some recognized exception to fit the case and, if none of the particular character can be found illustrated, to classify the circumstances within the broad

principle that rules based on supposed necessities of justice are not to be applied beyond their reasonable scope.

It seems clear in the circumstances of this case, that respondents had no way of adequately protecting themselves except by an action to cancel the note and mortgage. Nothing was received from *Addie Morris,* therefore there was nothing to return to her. Willingness to do equity was shown, in that readiness was exhibited to surrender the land to the true owner. No surrender to Mrs. Spaulding was possible because she was dead. The only thing open to respondents, under the circumstances, was to treat the conveyance as to the particular land as void, and appeal to equity to prevent the happening of irreparable injury to respondents. The only adequate way of preventing such injury was by an action to remove the cloud created by the mortgage on the land, obtained by good title, to cancel the mortgage in fact and of record and to effectually prevent transfer of the note to some innocent party by requiring delivery thereof into court for cancellation.

The foregoing covers all matters suggested by counsel for appellant which are deemed worthy of mention.

*By the Court.*—The judgment is affirmed.