Argued October 4, affirmed November 27, 1928.

# RUTH GOULD *v.* FRANK D. BESTER.

(271 Pac. 988.)

For appellant there was a brief over the name of *Messrs. Botts & Winslow,* with an oral argument by *Mr. T. H. Botts.*

For respondent there was a brief over the name of *Messrs. Veazie & Veazie*, with an oral argument by *Mr. Arthur L. Veazie.*

ROSSMAN, J.—The defendant presents for our consideration seven assignments of error, all of which are founded upon instructions given to the jury. They present two principal problems; first, whether the fraudulent representation revealed by the evidence constitutes a defense only to the extent of defendant's actual damage, or whether they defeat recovery upon the note; second, whether the instruction of the court correctly informed the jury as to the effect upon the bank of the knowledge acquired by its cashier, Beals, in the consummation of the transactions out of which the note arose.

Before proceeding to dispose of those assignments of error we shall state that there was evidence that the defendant's purchase of the stock was induced by fraudulent representations made by Beals. The latter was an officer in the corporation and also cashier of the bank. When the defendant had paid $250 upon his stock subscription the corporation delivered to him his certificate. The balance of the purchase price under the terms of his subscription was not due for several months. A week after the defendant made the above payment Beals requested that he execute a note for the balance of $750. He testified that Beals stated that the purpose to be served by the note ''was merely to make things look better on the records, * * I don't know whether they meant to look better to the Tillamook County Bank or to the Burner Company, I didn't understand that. * * The agreement was that if there was

a note made to the Lantz Oil Burner Co. that it wasn't even to be used at all." The payee of the note was the bank. The defendant has not tendered a return of the 100 shares of capital stock, but he testified: "Yes, after paying the two hundred and fifty dollars I would naturally keep the certificates until the money was paid back to me." As soon as the defendant learned that the bank held the note and was expecting payment he disavowed liability and stated that Beals' fraud had induced his signature.

The court's instructions were founded upon the premise that Beals' fraudulent representations, if proved, constituted an absolute defense to the note; whereas, the plaintiff contends that Beals' fraud was effective only to reduce the amount of recovery, and that it could not result in a judgment for the defendant unless the stock was valueless. The court, after analyzing fraud into constituent elements as suggested in *Wheelwright* v. *Vanderbilt,* 69 Or. 326 (138 Pac. 857), instructed the jury:

"I also further instruct you that * * failure of consideration is a defense to an instrument and the burden of proving the failure of consideration is upon the ones that urge it. The defendant in this case urges failure of consideration for this promissory note, * * and the only thing that they urge by way of failure of consideration is that he was misled by false and fraudulent misrepresentations to his injury and damage; in other words, he obtained nothing by reason of that transaction, and having obtained nothing, and having given this promissory note in part payment for the transaction, therefore there is a failure of consideration."

In charging the jury as to the effect upon the bank of the knowledge acquired by Beals, the court said:

"It is the law that whenever an agent, acting in the scope of his authority receives notice or has knowledge of a state of facts in which he represents the principles in which he is duty bound to communicate to his principal, it binds the principal, so, if you find in this case that B. L. Beals, Jr., as cashier of the Tillamook County Bank, at the time this note was executed and delivered by the defendant Bester to him for the bank, and payable to the bank, knew about the representations made by himself, if any were made to the defendant in this stock transaction, and he, the defendant, believing that he was executing this note in satisfaction of the balance of the purchase price of the stock of the Oil Burner Company, and Beals accepted the note for that purpose, and that it was in satisfaction thereof, then the Tillamook County Bank would be bound by whatever knowledge B. L. Beals had concerning the transaction between the Burner Company and the defendant which he himself conducted in behalf of the Burner Company with the defendant Bester, and the Tillamook County Bank would be bound by the knowledge that Beals had of that transaction, and if Beals made material fraudulent misrepresentations charged in this answer to Bester which induced Bester to purchase the stock, and it was false, and Beals knew it to be false, and the defendant relied upon it, then the Bank could not have recovered upon this voluntary note and neither can the plaintiff, its transferee recover on this note."

The exceptions were:

"I would except to the charge of the Court, that part of it and all parts of it which permits the jury to find for the defendant upon the ground of a failure of consideration; further to that part of the charge which is to the effect that notice to Beals would be notice to the bank."

██ A plea of failure of consideration may be sustained by proof that the article received was value-

less, and that the execution of the instrument was induced by fraudulent representations: 8 C. J. 978. The above is substantially the language of the instruction. The exception is not based upon a premise that there was no evidence that the stock was valueless; manifestly it was not necessary for the defendant to prove a total absence of value in the stock because he had paid $250, which was applicable toward any possible value which might have been present in the stock. If either the stock subscription or the note was not attended by a consideration it would suffice for the defendant's purposes. Yet the exception manifestly is based upon the theory that the court should not have permitted the jury to find for the defendant if the proof showed that the consideration for the note was tainted with fraud unless the latter deprived the stock of all its value. In support of its position the plaintiff argues that since the defendant has not tendered a return of the stock he cannot avail himself of any defense based upon the elements of rescission, but must be content with an offset against plaintiff's claim to the extent of any damage suffered by himself as a result of the fraud. All of this assumes that the defendant owed a duty to tender a return of the stock. He, however, received nothing from the plaintiff nor from her assignor. He possessed and owned the stock before Beals proposed the execution of the note. As we observed before the moment the defendant heard the bank held his note, he renounced liability and stated his reasons. Rescission applies only to contracts executed in whole, or in part, by the fraudulent party, and not to those purely executory: *Roberts* v. *James,* 83 N. J. Law, 492 (85 Atl. 244, Ann. Cas. 1914B, 859). According to the defendant's testi-

mony the note was not executed for immediate use, but its delivery was a conditional one; if the jury accepted as true this evidence, and believed that the bank had notice of these facts, the defendant was entitled to have the contract regarded as still executory when he renounced liability, and thus his disavowal effected a rescission. If such were the facts the instruction was proper.

■ But we shall go on and assume that when the note was given the parties contemplated that the corporation should make immediate use of it, and that the bank's later advancement of $750 upon the note was at that time contemplated.

In *Mills* v. *Morris,* 156 Wis. 38 (145 N. W. 369), a widow, through her agent, the defendant, Addie Morris, induced the plaintiff to purchase a parcel of land, employing as an inducement the fraudulent representation that the widow's stepson was dead; he, as held, was entitled to the property. This is an action to cancel a note and mortgage, held by the defendant and executed as a part of that transaction. The defendant argued that the plaintiff had not tendered a return of the purchased land. The court disposed of that contention tersely by holding: "Nothing was received from Addie Morris, therefore there was nothing to return to her. Willingness to do equity was shown, in that readiness was exhibited to surrender the land to the true owner."

*Dewey* v. *Allgire,* 37 Neb. 6 (55 N. W. 276, 40 Am. St. Rep. 468), was a suit by a guardian of an insane person to set aside a conveyance of real property effected during the disability of the ward. After the conveyance the vendee sold the land to the defendant, Mowry. The plaintiff did not offer to recompense Mowry for the price he had paid to the

original vendee. The court disposed of this circumstance by saying: "And as to Mowry, restitution of the purchase money paid by him to Allgire, if any, must rest between those two."

In *Martin* v. *Hutton*, 90 Neb. 34 (132 N. W. 727, 36 L. R. A. (N. S.) 602), the plaintiff was induced by the defendant to file an entry upon some government land; also, to pay the defendant a sum of money to secure a relinquishment of an alleged prior entry. In truth, as the defendant knew, there was no prior filing affecting this land. Upon discovering the defendant's fraud the plaintiff brought this action to recover the amount he had paid the defendant. The latter objected that the plaintiff could not recover without tendering a return of the land. This objection the court disposed of by saying:

"The plaintiff was not required, as a condition precedent to prosecuting this action, to rescind the contract. The defendant did not own the land, was not the government's agent, and gave the plaintiff nothing except information concerning the location of the real estate."

In *Hargadine* v. *Swofford*, 65 Kan. 572 (70 Pac. 582), one Kramer, a merchant, owed the defendant a large sum of money. Under these circumstances he executed and delivered to the defendant an instrument which the court described as "more nearly in the nature of a conditional bill of sale of his stock of goods than anything else." It made provision so that the stock would protect the defendant for future advances the parties contemplated the defendant should make. When Kramer's condition failed to become better the defendant took possession of the stock and at the same time agreed to settle all claims against Kramer. The plaintiff brings this

action as one of Kramer's creditors to recover upon this promise. The defendant answered that Kramer's fraudulent representations as to his financial condition had induced it to make this promise. The plaintiff contended that this defense was not available to the defendant because it had failed to tender a return of the stock of merchandise. The lower court held that a restoration was necessary, and excluded the defendant's evidence of fraud because it failed to make a tender. This was held error on appeal; the decision states:

"The reason given by the district court for its rejection of the offered evidence, to-wit, that the Hargadine Company could not repudiate the assumption contract, into the making of which it had been fraudulently entrapped, without restoring the *status quo,* is not a valid one. The general rule that a person who receives something under a contract which he would not otherwise have obtained cannot rescind the transaction without making restoration does not apply. The Hargadine company got nothing from Kramer that was not already theirs; the stock of goods belonged to them; they were entitled to its possession; they merely entered on their own. The assumption agreement, as to all indebtedness due to third persons over and beyond the $500 allowed by the express terms of the bill of sale of March 2, 1896, was gratuitous on the part of the Hargadine company. It was not required by the terms of the agreement under which Kramer was holding the goods, and it furnished no consideration for his surrender of their possession.

" 'One who attempts to rescind a contract on the ground of fraud is not required to restore that which in any event he would be entitled to retain, either by virtue of the contract sought to be set aside or of an original liability.' (*Kley* v. *Healy,* 127 N. Y. 555 (28 N. E. 593).

"It is suggested that the Hargadine Company received from Kramer something additional to the stock of goods, to-wit, the store furniture and fixtures. While these were not described in the bill of sale, yet the letter of the Hargadine company of December 3, 1898, treats of them as though they were subject to the terms of that instrument. Many of them were, in fact, disposed of by Kramer himself, in his discharge of his own indebtedness, and some were left in the store building upon the removal of the goods. But a sufficient answer to the claim of new consideration in this respect is that it does not appear that the transfer of any of this furniture or fixtures to the Hargadine company was made to it to induce it to enter into the assumption agreement, and, were it otherwise, there is much doubt, indeed whether it would constitute, under the circumstances of this case, a reason for invoking the rule of restoration before rescission."

We believe that these cases, which we have reviewed, point out the disposition which should be made of the controversy before us. The defendant was the owner of the stock before he executed the note; he received nothing from the plaintiff, hence the demands of rescission did not require that he should put it in possession of anything to effect a rescission. The disposition of the stock is a matter which must be adjusted between the defendant and his vendor; he has indicated a willingness to return it when he is compensated for the amount he expended in its purchase. We find no error in this portion of the instructions; particularly so, in view of plaintiff's vague exception.

It is next claimed that the court erred when it charged the jury in regard to the effect upon the bank of Beals' knowledge of the fraudulent transaction out of which the note arose. The defendant

claims that his proof brought the case within the rule that when a corporation entrusts the transaction of a piece of business exclusively to an officer, who possesses knowledge privately of the infirmity, his knowledge will be imputed to the corporation. This principle is stated and discussed in 4 Fletcher's Cyc. of Corp., Section 2251. The plaintiff does not dispute this rule as earnestly as he contends that the proof fails to show that Beals was the sole officer of the bank who had charge of the advancement of the $750. We shall briefly review the evidence. Beals, as we have observed before, was the cashier of the bank; this is an item of considerable importance, because of the great authority usually conferred upon such an officer: *Loring* v. *Brodie & Merchants' Nat. Bank,* 134 Mass. 453; 7 C. J., Banks and Banking, Section 160. The note was prepared by Beals upon the note forms printed expressly for the bank, and was signed by the defendant upon the premises of the bank. The deposit slip of $750, employed when the proceeds of the note were deposited to the credit of the corporation, was written by Beals; the reply states that the bank received the note from him, and at his request paid the corporation the $750. We have the additional circumstances that Beals solicited many of the customers of the bank and endeavored to sell them stock, and that Kuratli, another officer of the bank, was also an official of the Burner Company and interested in the sale of its capital stock. The corporation maintained its account with this bank. There was no evidence that any other officer of the bank participated in this transaction. When the defendant had progressed this far in the presentation of his evidence, he had very likely exhausted his resources of proof; the

above would seem to warrant the deduction that Beals, the cashier, was the only officer of the bank who handled the matter of advancing to the corporation $750 on defendant's note. If that conclusion, which it was apparent the defendant would invite the jury to form, was not the correct one, it would seem that the court could very justly demand of the plaintiff that she produce the proof that some other officer of the bank, ignorant of the tainted origin of the note, had participated in the transaction. The plaintiff, as the voluntary assignee of the bank, must have possessed a more ready access to this evidence than the defendant, a hostile party. Then, also, more than five years had passed since the defendant signed the note. The plaintiff, however, offered no evidence upon this subject matter of inquiry. She calls to our attention the fact that a week elapsed from the time that Beals obtained the note before the bank made the advancement; this circumstance is no proof that any other officer participated in the transaction. The defendant also submits for our consideration the decision of the West Virginia court in *American Nat. Bank* v. *Ritz*, 70 W. Va. 409 (74 S. E. 679, 40 L. R. A. (N. S.) 156); this holding is discussed in the above section of Fletcher, Cyc. on Corp., and is assigned a place among the minority decisions. The majority view, we believe, is the preferable. The plaintiff has also called to our attention *Dight* v. *Chapman*, 44 Or. 265 (75 Pac. 585, 65 L. R. A. 793), and *Saratoga Inv. Co.* v. *Kern*, 76 Or. 243 (148 Pac. 1125). In *Saratoga Inv. Co.* v. *Kern, supra*, Mr. Justice HARRIS, with his characteristic thoroughness, discussed the questions before the court; one of which was the imputation of the agent's private knowledge to his principal. Both

cases, together with the section from Fletcher, *supra,* authorize the conclusion that the court did not commit any error affecting the plaintiff and saved by the exception when it gave the instruction complained of.

It follows that the judgment appealed from should be affirmed. AFFIRMED.

RAND, C. J.; and BEAN and McBRIDE, JJ., concur.