GIFFORD and another, Respondents, vs. THUR and another, Appellants.

*November 10, 1937—February 15, 1938.*

632

For the appellants there were briefs by *Geo. J. Graebner* and *Ira S. Lorenz,* both of Milwaukee, and oral argument by *Mr. Graebner.*

*John H. Schlintz* of Milwaukee, for the respondents.

The following opinion was filed December 7, 1937:

MARTIN, J.   Supplementing the specific findings quoted in full, the court further found that when plaintiffs discovered their mistake on Monday morning, December 16, 1935, they

immediately tried to get into communication with the defendant by telephone, but were not successful in finding him; that they placed a stop-payment order on the two checks which had been issued and delivered to the defendant on Saturday, December 14th. The checks were not cashed at the bank on which they were drawn. Later, plaintiffs withdrew the stop-payment order, as the banks which had cashed same were innocent holders for value. On the same day, December 16th, plaintiffs wrote defendant referring to the mistake made and requested that the mistake be corrected. Plaintiffs also had their attorney notify the defendant that the contract of sale was rescinded, demanding a return of the money paid for the stock; at which time, plaintiffs' attorney offered to return the sixty-five shares of Wisconsin State Bank stock, upon defendant returning the money. The defendant refused to return the money and kept and retained it for his own use and for the use of the estate for which he was the executor. In this connection, the trial court found:

"The conduct of the defendant Harry E. Thur in consummating said sale with notice of plaintiffs' mistake and in keeping and retaining the money he received for the stock, constitutes bad faith on his part."

On May 1, 1936, while this action was pending in the circuit court, plaintiffs sold the sixty-five shares of the Wisconsin State Bank stock, which they had received from the defendant, for the sum of $1,950, that being $30 per share. The court found that the price of $30 per share is the highest price that such stock has been worth at any time since December 14, 1935. As to the value of the American State Bank stock, the court found:

"Many sales of stock of the American State Bank were made in the year 1935, several such sales had been made by the plaintiffs at prices ranging from $51 to $55 per share. Another regular dealer had bought or sold the stock at from

$51 to $60 a share. One share of stock was sold on December 10, 1935, for $76. Two shares of stock were sold on December 18, 1935, for $76 a share. These last two sales were made to a stockholder of the American State Bank who wished to increase his holdings. The market varied. The selling prices extended over a wide range. The attempted purchase by the plaintiffs from the defendant of American State Bank stock at $52 a share was not any such proof of bad faith on the part of the plaintiffs as would justify a court of equity in denying relief to the plaintiffs on that ground."

As conclusions of law, the court found that the plaintiffs by mistake paid $52 a share for sixty-five shares of stock, not worth more than $20 to $25 a share, under circumstances entitling them to have the contract rescinded in a court of equity; that plaintiffs had elected to sue for rescission and were bound by their election. In this connection, the court said:

"They must accept whatever relief the court can give in view of the remedy they sought. They had a lien on the stock as security for the repayment to them of the money they paid by mistake but they were not the sole owners of the stock. By the sale they deprived themselves of the ability to do their part of the rescinding of the contract. Unless the law so requires it would be inequitable and unnecessarily harsh to deny them all relief because of that sale. Equity looks to the substance of things and not merely to forms. The stock was sold for its full value. If defendants are credited with that selling price as of December 14, 1935, they would have no cause to complain. Any other damages they suffered from the sale was theoretical only and not actual. In a suit for rescission a court of equity has power to adjust the equities as above indicated. *Ludington v. Patton,* 111 Wis. 208, par. 13, 14, and 17 of syl; *Mills v. Morris,* 156 Wis. 38; *Mueller v. Michels,* 184 Wis. 324."

The judgment was for the difference between what plaintiffs had paid for the sixty-five shares of bank stock, namely, $3,380, and the amount which plaintiffs had received on the

sale of the stock on May 1, 1936, namely, $1,950. That is, for the sum of $1,430, with interest at six per cent from December 14, 1935.

Appellants, while challenging to some extent the findings of fact, make their principal contention on legal grounds. We have carefully considered the evidence, and under the elementary rule that findings of the trial court may not be disturbed upon appeal unless such findings are against the clear preponderance of the evidence, we conclude that the findings must be sustained.

The appellants contend that plaintiffs were not entitled to rescission in any event. In support of such contention, they say that plaintiffs did not come into court with clean hands; that plaintiffs' negligence is a bar to rescission; that there was no fraud on the part of the defendants. In support of the equity maxim, they argue that because plaintiffs were negotiating at the time for American State Bank stock at $52 a share, which they contend at the time was worth $75 a share, it showed bad faith on plaintiffs' part to such a degree that they should be denied equitable relief. It is true, as found by the trial court, that a few shares of American State Bank stock sold in December, 1935, for $75 a share. The court found that such sales were made to certain stockholders of said bank, who wished to increase their holdings. Concededly, the market varied; many sales were made during the year 1935, at prices ranging from $51 to $55 a share, some as high as $60 a share, but the court found that:

"The attempted purchase by the plaintiffs from the defendant of American State Bank stock at $52 a share was not any such proof of bad faith on the part of the plaintiffs as would justify a court of equity in denying relief to the plaintiffs on that ground."

We cannot say that this finding is against the clear preponderance of the evidence. As to the plaintiffs' alleged neg-

ligence in negotiating for the purchase of sixty-five shares of American State Bank stock, under the circumstances surrounding the final transaction of the parties on December 14, 1935, it would serve no useful purpose in this opinion to review the facts which are fully set out in the court's findings above quoted. The court did specifically find that:

"All of said acts of said agents were done under such circumstances that any negligence of said agents was not of such a nature as would preclude the plaintiffs from rescinding the sale, even if the mistake was only an unilateral one."

Clearly, this finding is sustained by the evidence.

The further contentions of the defendants may be treated together, and are as follows: That plaintiffs were not entitled to rescind in the absence of restoration of *status quo,* for the reason that at the time of trial, plaintiffs were unable to make good on tender pleaded, and that the court erred in granting a money judgment. These contentions present the only troublesome questions involved on this appeal. Counsel, on both sides, appear to have considered this as an equitable action for rescission. If it is an action at law involving a legal rescission as distinguished from an equitable rescission, which would invoke the equitable powers of the court, we would have a question of the defendants' right of trial by jury unless it be waived. It appears that at the outset of the trial, defendants' counsel stated:

"I would like, if the court please, to make this statement. I am of the opinion that this is purely an equitable action. . . ."

Counsel also said:

". . . I am perfectly willing and it is immaterial to me whether this case be tried by the court or a jury, but I do want to make plain my position that, as before stated, it is purely an equitable action brought for the rescission of a contract, and therefore, equitable principles, and those only, shall be treated, and I do not want to prejudice that contention or

that right as I see it and contend for it, by participating in the striking of the jury. . . ."

The court, addressing counsel for plaintiffs, said:

"That is your understanding, Mr. Schlintz?

"Mr. Schlintz: I agree with counsel that this is an equitable action.

"The Court: Do you want a jury?

"Mr. Schlintz: No, I do not care for a jury. I would just as soon try it before the court.

"The Court: I notice that the form of relief asks for a rescission. Where a party to a contract has a right to rescind on certain reasons without the aid of the court, and sue at law, it is close to the border line perhaps as between a jury and a court case.

"Mr. Schlintz: I really had it in mind to try this as purely an equitable action."

The notice of trial listed it as an issue of fact for a jury. Finally, the court asked:

"What do the attorneys want to do, try it before the court without a jury?

"Mr. Schlintz: The plaintiff is willing to try it before the court without a jury.

"The Court: What do you say, Mr. Graebner?

"Mr. Graebner: Reiterate, Your Honor, as I said before, it is agreeable with me to try the case before the court with or without a jury. I am willing to try it without a jury if Mr. Schlintz prefers that.

"The Court: Well, you both claim that it is a court case and maybe it is. If the parties so agree it will be tried by the court without a jury. I understand you both so agree?

"Mr. Schlintz: That is right, I so agree.

"Mr. Graebner: I so agree."

Whereupon the court excused the jury. At the conclusion of the evidence, plaintiffs' counsel moved "to amend the pleadings to correspond with the evidence," on the claim that "the plaintiff has an action for money had and received." Defendants' counsel objected to the amendment on the

ground that the effect of it would be to treat the action as one at law instead of in equity, and that the defendants, therefore, had been deprived of a trial by jury. Defendants' counsel further asked for a jury trial on the basis of plaintiffs' counsel having decided to treat the matter as an action at law for money had and received. To this the court replied:

"If the court thought the case was brought in good faith and that legal relief was the proper relief, the court could retain the action for the purpose."

We are of the opinion that the question as to defendants' right of a jury trial is out of the case. It was definitely waived. We are also of the opinion that we are dealing with a legal rescission, not an equitable rescission.

"In a legal rescission the defrauded party rescinds, and he does so by either restoring or by offering to restore the consideration received by him, and it follows as a matter of course, if the fraud be established, that he may recover the consideration paid, whether it be money or property. On the other hand, the party himself does not rescind in a suit for equitable rescission. In such a case the appeal to the court is an application for the court to rescind, and the rescission does not take place until it is adjudged by the court." *Mueller v. Michels,* 184 Wis. 324, 340, 197 N. W. 201, 199 N. W. 380.

In the case at bar, the plaintiffs promptly rescinded the transaction upon discovering their mistake on December 16, 1935. They tendered the sixty-five shares of the Wisconsin State Bank stock and demanded a return of the $3,380. Whereupon plaintiffs commenced this action. On May 1, 1936, while this action was pending in the court below, plaintiffs sold the sixty-five shares of bank stock for the sum of $1,950. Plaintiffs had, in fact, rescinded the transaction before they commenced this action. They were bound by their election. The prayer of their complaint is:

"That said agreement in all respects be rescinded and that plaintiffs have judgment against said defendants for the sum

of $3,380, together with their costs and disbursements in said action."

It appearing upon the trial that plaintiffs had sold the stock, the court ordered that defendants be credited as of December 14, 1935, with the sum received upon the sale, and gave judgment in favor of the plaintiffs against the defendants for the sum of $1,430, with interest on said sum at six per cent per annum from December 14, 1935.

"The right of rescission of a contract for fraud, though a legal right, is based on equitable principles. . . ." *Gay v. D. M. Osborne & Co.* 102 Wis. 641, 647, 78 N. W. 1079. *Mills v. Morris,* 156 Wis. 38, 43, 145 N. W. 369.

In *McLennan v. Church,* 163 Wis. 411, 416, 158 N. W. 73, the court said:

"In case of an action having been commenced in good faith to obtain equitable relief, and it subsequently appearing that such relief cannot, or ought not to be, granted, but the facts disclosed by the evidence show that plaintiff has suffered a remediable wrong in the transaction forming the groundwork of the action, entitling him to be compensated by money damages, the court may, and where justice clearly requires it under the circumstances, should retain the cause and afford such relief, and make the same efficient by provisions for a recovery as in an ordinary legal action or as are appropriate to a judgment for equitable relief, as may be best suited to the circumstances of the particular case." Citing *Stevens v. Coates,* 101 Wis. 569, 78 N. W. 180; *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Knauf & Tesch Co. v. Elkhart Lake S. & G. Co.* 153 Wis. 306, 141 N. W. 701.

On the evidence and findings of the trial court, plaintiffs were in the position of defrauded vendees. That is, they contracted for certain bank stock at an agreed price, having a certain value. The stock delivered, purporting to be the stock contracted for, was of a much less value. The court

found the value of the respective stocks. The judgment as entered is for the difference in these values.

"The general rule is that a defrauded vendee, by way of damages, is entitled to the difference between the value of the thing as represented and the actual value." *Mueller v. Michels,* 184 Wis. 324, 343, 197 N. W. 201, 199 N. W. 380. Citing *Potter v. Necedah L. Co.* 105 Wis. 25, 80 N. W. 88, 81 N. W. 118; *Birdsey v. Butterfield,* 34 Wis. 52; *Kobiter v. Albrecht,* 82 Wis. 58, 51 N. W. 1124; *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 15, 1938.