Argued May 6, affirmed June 9, rehearing denied September 8, 1914.

## OLIVER *v.* GRANDE RONDE GRAIN CO.

(142 Pac. 541.)

**Appeal and Error—Record—Questions Presented for Review.**

1. A transcript of the testimony, with the objections of counsel, offers to prove, and the like, attached to the bill of exceptions, will be considered by the Supreme Court only to determine the correctness of a judgment of nonsuit or on the direction of a verdict at the close of all the testimony.

**Judgment—Conclusiveness—Matters Concluded.**

2.   An action for the conversion of grain on which the plaintiff had a landlord's lien was properly nonsuited as to defendants, who were parties to a suit in which a decree had been rendered foreclosing the lien, where there was no testimony that any change of possession respecting those defendants happened afterward affecting the grain in question.

**Landlord and Tenant—Landlord's Lien—Notice to Third Parties.**

3.   The validity of a lien reserved by an unrecorded lease on grain as against a grain company with which it was stored and which afterward purchased it, depends on whether the grain company had notice of the lien.

> [As to lien of landlord on tenant's crops, see note in 14 Am. St. Rep. 166.]

**Corporations—Representations by Agents—Notice to Agent.**

4.   While a principal is bound by knowledge of the agent acquired while acting for his principal within the scope of his authority, a grain company is charged with its president's notice of a lien on grain, acquired independently of the company's business, only if such knowledge was present in his mind while transacting the company's business or was communicated to him under such circumstances as to lead a reasonable person to conclude that it must have been present in his mind when transacting the company's business.

**Landlord and Tenant—Landlord's Lien—Notice to Third Parties.**

5.   That a grain company may have had notice that a person storing and selling grain was a tenant does not charge the company with notice that the landlord had a lien on the grain.

**Landlord and Tenant—Rent—Liability for—Liens.**

6.   Invalidity of receipts issued by a grain company because of absence of a license allowing it to do business as a warehouseman does not affect the liability of the company to the landlord of the person storing and selling the grain to the company as for conversion.

From Union: JOHN W. KNOWLES, Judge.

In Banc.   Statement by MR. JUSTICE BURNETT.

This is an action by E. W. Oliver, against two corporations, the Grande Ronde Grain Company and the Pioneer Flouring Mill Company, and three individuals, Ed Kiddle, Fred Kiddle and Merton Kiddle.   For convenience the corporations will be designated as the Grain Company and the Mill Company respectively. The complaint is to the effect that the plaintiff at the times mentioned therein was the owner of a farm which he leased to a tenant for a term of years, in-

cluding the crop years of 1910 and 1911, for annual cash rentals, each evidenced by a promissory note falling due October 1st of the several years, with interest mentioned. As the complaint states, the plaintiff "reserved a lien upon all crops grown on said lands to secure the payment of the rent." It declares that the tenant harvested the crop of wheat for the year 1911, and deposited the same with the Grain Company as bailee thereof prior to October 1st of that year. Afterward, on the 26th of that month, the plaintiff brought suit against all the above-named defendants, except the Grain Company, to foreclose his lien on the wheat, and recovered a decree in that suit on May 8, 1912, according to the prayer of his complaint. Upon this decree an execution was issued, and when the sheriff armed with the writ attempted to take possession of the wheat, it was discovered that, according to the complaint, the defendants had converted the wheat to their own use, and removed and so disposed of the same that the officer was unable to find it, in consequence of which the plaintiff's lien was destroyed, to his damage in the amount due upon the decree.

A second cause of action relates to a balance due upon the rent of 1910, and is like the first, but with this difference, that the only litigation arising out of that matter was an action at law against the tenant to recover the rent; but upon this judgment no execution was issued, and the defendants are accused of converting the crop of that year to their own use.

All the defendants besides the Grain Company deny the allegations of the complaint, except the corporation of the Mill Company. They plead no affirmative matter in defense. The Grain Company traverses the complaint and pleads, in substance, that the tenant, being in possession of 4,200 sacks of wheat, claiming

to be the owner of the same, deposited it with the Grain Company between August 4 and September 24, 1911, and that afterward, on October 6, 1911, in due course of its business as a dealer in grain, the Grain Company purchased the grain, together with the receipts it had issued therefor, from the tenant who was then and there the owner of it, and that the defendant bought the wheat in good faith for value in the usual course of business, without notice of any claim upon the same by or on behalf of the plaintiff. Similar affirmative matter is pleaded in answer to the plaintiff's second cause of action.

The reply challenges the new matter in the answer in material particulars, and alleges, in substance, that at the time mentioned in the complaint the Grain Company had no license authorizing it to engage in the business of storing grain belonging to other persons. At the close of the plaintiff's case in chief, in a jury trial, on their motion, the court entered a judgment of nonsuit in favor of all the defendants, except the Grain Company. As to the latter, the trial resulted in a verdict and judgment in its favor, from which the plaintiff appeals.    AFFIRMED.   REHEARING DENIED.

For appellant there was a brief with oral arguments by *Mr. Turner Oliver* and *Mr. James D. Slater.*

For respondents there was a brief over the names of *Mr. Charles H. Finn* and *Messrs. Cochran & Eberhard,* with oral arguments by *Mr. Finn* and *Mr. George T. Cochran.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The bill of exceptions has attached to it what purports to be a literal transcript of the testimony, with

the various objections of counsel to testimony, offers
to prove, and the like.   Many of the assignments of
error set out in the plaintiff's abstract relate to mat-
ters not disclosed in the bill of exceptions proper.
The new series of decisions, so to speak, on the struc-
ture of the bill of exceptions begins with *Keady* v.
*United Rys. Co.,* 57 Or. 325 (100 Pac. 658, 108 Pac.
197), and ends with *National Council* v. *McGinn,* 70 Or.
457 (138 Pac. 493).   The essence of these decisions,
which are continuations of many others from the early
history of the court to the present time is that a literal
rehearsal of the whole testimony of the case will be
considered for two purposes only: One for determin-
ing the correctness of a judgment of nonsuit; and the
other on the direction of a verdict at the close of all
the testimony.   Governed by the rules thus established,
we must ignore many of the assignments of error set
out in the abstract.

2. In passing we hold that the judgment of non-
suit was properly entered as to all the defendants,
except the Grain Company, for the reason that they
were all parties to the suit to foreclose the lien, by the
decree in which the status of the property was fixed
as to them, and there was no testimony whatever that
any change of possession respecting those defendants
happened afterward affecting the grain in question.
It was not shown that any of them had any custody
of the wheat or anything to do with it, as claimed in
the complaint.

3, 4. It is assigned as error that the court refused
to admit in evidence the judgment-roll in the fore-
closure suit, but the bill of exceptions shows, on page
10 thereof, that the judgment-roll in question was ad-
mitted in evidence.   The purpose of this document was
to impute notice to Ed Kiddle of the claim of the plain-

tiff under his supposed lien and thus to affect the
Grain Company, although it was not a party to the
foreclosure suit.   This depended upon the admitted
fact that at all times named in the pleadings Kiddle
was at once president of both corporations and upon
that basis the plaintiff maintained that, although the
Grain Company was not concerned in that litigation,
yet notice to him as an individual defendant and as
president of the Mill Company would bind the cor-
poration which was not, a party to the suit.   This also
depended upon whether or not the Grain Company had
purchased the grain prior to the commencement of the
foreclosure suit without notice of the claim of the
plaintiff.   The lease was not acknowledged or recorded
so as to impart constructive notice like that arising
from the record or filing of a chattel mortgage.
Among the terms of the lease under which the plaintiff
claimed a lien are these:

"And the said Frank Cullen does hereby promise
and agree to pay to the said E. W. Oliver therefor the
following yearly rental, to wit: For the season of 1910,
a cash rental of $4,333.50 (and so on, naming the cash
rental for each year to and including the year of 1916),
payable on the first day of October of each year re-
spectively, out of the first moneys received for said
years' crops, the said E. W. Oliver to hold lien upon
said crop until such rent is paid, said yearly rentals
being evidenced by seven promissory notes of even
date herewith."

In addition to whatever effect may be given to the
judgment-roll in the foreclosure suit, the plaintiff af-
firmed, as a witness in rebuttal, and Ed Kiddle denied,
also as a witness, that in June, 1911, the two men met
in the City of Portland, and in a casual conversation
Kiddle was informed by the plaintiff that the latter
had a lien for the rent.   Conceding, without deciding,

that the language of the lease already noticed would be more than a mere agreement to establish a lien in the future, and would amount to a present lien, and, further, that the same is sufficiently pleaded in the complaint, its validity must depend upon whether or not the Grain Company had notice thereof, because, as already stated, the lease was not recorded in the manner required by law to impute the statutory constructive notice of any claim against the grain on behalf of the plaintiff. The general rule is that a principal is bound by what knowledge the agent acquires while acting for his principal within the scope of his authority. That is the ruling principle in all the cases which have been decided on that point in this court: *Rayburn* v. *Davisson,* 22 Or. 242, 243 (29 Pac. 738); *Dight* v. *Chapman,* 44 Or. 265–278 (75 Pac. 585, 65 L. R. A. 793); *Hoffman* v. *Habighorst,* 49 Or. 379–386 (89 Pac. 952, 91 Pac. 20); *Dillard* v. *Olalla Min. Co.,* 52 Or. 126–132 (94 Pac. 966, 96 Pac. 678). The essence of all of them is that the knowledge was gained by the agent while in the actual transaction of business for the principal. In other words, the agent, being at the time the actor in place of the principal, or the other self of the latter, is for all practical purposes the principal himself, and the latter is bound by the knowledge of his substitute obtained while active in the fiduciary relation. The principle has been extended also to include knowledge of the agent acquired in other relations and independent of his principal's business, but with this qualification: That if the principal is to be bound by subsequent transactions conducted by the agent who acquired such previous knowledge from independent sources, it must be shown that he had in mind and remembered the previous information thus received, or it must be so recent and under such en-

vironments as to lead the jury to conclude as a matter
of fact established by circumstantial evidence, that he
must have had the same in mind. It is thus reduced
to a question of fact in the latter case for the jury to
determine whether the agent had in mind and so was
affected vicariously for his principal by the previous
knowledge obtained while not connected with or act-
ing for his employer. It cannot be said in reason that
every scrap of information acquired by an individual
in a social or casual way or wholly disconnected with
any business transaction will charge every institution
of which he may chance to be a member absolutely and
in all events in all subsequent transactions. On the
other hand, it would not be consonant with common
honesty for an agent having such information which
he is at liberty to disclose to willfully disregard the
same or dismiss it from his mind. On this branch of
the case the court gave the following instruction to the
jury, of which the plaintiff principally complains:

"You are further instructed that knowledge obtained
by an officer of a corporation in his private or social
affairs is not imputed to the corporation, and is not the
knowledge of that corporation, unless such knowledge
was present and in the mind of the officer while trans-
acting the corporation's business, or such knowledge
was communicated to the officer under such circum-
stances as to lead a reasonable person to conclude that
such knowledge must have been present to his mind
and memory when transacting the corporation's busi-
ness, and if you find from the testimony that the
plaintiff told Ed Kiddle, the president of the defendant
Grande Ronde Grain Company, that he had a lien on
Cullen's crop for his rent, and that such conversation
took place as a casual conversation at Portland in the
Imperial Hotel, and not in the office of the company,
nor during the transaction of said company's business,
then such conversation was not notice to the defendant

Grande Ronde Grain Company, unless you further find that it is reasonably probable that such conversation was present in his mind and memory àt the time said Ed Kiddle bought the wheat for the defendant company, and your verdict should be for the defendant."

The leading case on this feature of agency is *The Distilled Spirits,* 11 Wall. 356 (20 L. Ed. 167), where the Supreme Court of the United States says:

"The doctrine now seems to be established that if the agent, at the time of effecting a purchase, has knowledge of any prior lien, trust or fraud affecting the property, no matter when he acquired such knowledge, his principal is affected thereby. If he acquire the knowledge when he effects the purchase, no question can arise as to his having it at that time; if he acquired it previous to the purchase, the presumption that he still retains it and has it present to his mind will depend upon the lapse of time and other circumstances. Knowledge communicated to the principal himself he is bound to recollect, but he is not bound by knowledge communicated to his agent, unless it is present to the agent's mind at the time of effecting the purchase. Clear and satisfactory proof that it was so present seems to be the only restriction required by the English rule as now understood."

In *Farmers' Bank* v. *Saling,* 33 Or. 394, 406 (54 Pac. 190, 194), the instruction in question was as fòllows:

"I instruct you that notice to the cashier of the bank is notice to the bank, in transactions conducted by such cashier, acting * * for the bank, within the scope of his authority, whether his knowledge was acquired in the course of the particular dealing or on some prior occasion, provided the knowledge is so recent and so circumstanced in other respects as to render it reasonably probable that it was still present in the mind of the cashier when acting for the bank in the matter to which it relates."

Mr. Justice WOLVERTON, speaking for the court, there said:

"It is admitted on all sides that the instruction as requested is sound in principle."

The following citations are helpful in the consideration of this principle: *Patterson* v. *Irvin,* 142 Ala. 401 (38 South. 121); *Equitable Sureties Co.* v. *Sheppard,* 78 Miss. 217 (28 South. 842); *Gregg* v. *Baldwin,* 9 N. D. 515 (84 N. W. 373); *Morrison* v. *Bausemer,* 32 Gratt. (Va.) 225; *Johnson's Exr.* v. *National Exch. Bank,* 33 Gratt. (Va.) 473. In the latter case the court said:

"In order to affect the creditor by the previous notice or knowledge of his agent or trustee of the existence of a prior unrecorded lien on the real estate which is conveyed for his security, it is necessary that the notice or knowledge should have been given or imparted to the agent in the same transaction, unless one transaction is closely followed by, and connected with, the other."

The court properly instructed the jury on this point, which is the controlling one in this case, and we cannot disturb the verdict reached by those triers of fact. Fuller consideration of the objections to instructions is impracticable, because only extracts from the charge of the court are given.

5. A great deal is said in argument about the fact of which the officers of the Grain Company possibly had notice, that Cullen was a tenant on the farm of the plaintiff, and that it imparted such notice to the defendants as would put them upon inquiry leading to knowledge of the plaintiff's lien. The question, however, is not notice of the lease, but what would put one upon inquiry about the grain after the same had been severed from the realty and found in the possession of the tenant claiming to own the same. By his lease

the plaintiff had conferred upon the tenant an estate for years in the land, reserving a cash rent. The tenant was in possession of the property, and the cases cited by the plaintiff here about property being in the possession of another and so imparting notice of the claim of the possessor would apply if the defendant had bought the grain of someone else while the same was in the possession of the tenant. Possession of the tenant would be notice of his rights if they were there questioned.

6. Much also is said about the invalidity of the receipts issued by the Grain Company in the absence of a license allowing it to do business as a warehouseman, but this does not affect the case, because it was alleged and conceded that the grain was stored with the Grain Company. The evidence shows without question that the Grain Company bought the wheat from the tenant and paid for it the market value on the 6th day of October. The storage of the grain in an unlicensed warehouse did not destroy the salability of that commodity. It did not operate to deprive the owner of the right to sell it nor prevent anyone from buying it, although the warehouseman had not complied with the law providing for further security to the depositor. The result of the case depended upon whether or not the Grain Company had notice of the claim of the plaintiff at or before the time it purchased the grain. As we have seen, this question was submitted to the jury, and has been decided in favor of the defendant.

Its conclusion and the subsequent judgment must be affirmed.        AFFIRMED.    REHEARING DENIED.