WINANS, Respondent, v. LIGHT et al, Appellants.

(217 N. W. 635.)

(File No. 6414.   Opinion filed February 4, 1928.)

*McNulty, Williamson & Smith,* of Aberdeen, for Appellants.
*Frank L. Sieh,* of Aberdeen, for Respondent.

MORIARTY, C. This action was begun by the respondent, S. L. Winans, to recover for the alleged conversion of certain wheat. The case was tried to a jury, which returned a verdict in favor of the plaintiff for the full amount of his claim. From the judgment entered in accordance with said verdict, and from an order denying a new trial, the defendants appeal.

As to most of the material questions there is no conflict of evidence, but, as we do not find that there was any error in the submission of the case to the jury, and the jury found for the plaintiff, we are required to resolve all conflicts in favor of the plaintiff, respondent herein. So considered, the facts shown by the record are as follows:

On September 19, 1921, Winans made a written contract whereby he leased to William Cooper, for the farming season of 1922, the N. W. ¼ of section 19—124—59, in Day county, and the S. E. ¼ of section 13—124—60, in Brown county. By the terms of this contract Cooper was to furnish all seed and labor for farming the lands, was to pay all the thresh bills and two-thirds of the hail insurance tax. He was also to pay $3 per acre

cash rent for land which he planted to corn and for all hay and pasture lands on the farm.

This leasing contract further provided that the title to all crops should be and remain in the landlord "until the final settlement," and that the landlord "has the right to take and hold enough of the crop" and products belonging to the tenant "to pay all indebtedness due" to the landlord from the tenant. And, upon the performance of all the stipulations of the contract by the tenant, the landlord agreed to deliver two-thirds of the grain to the tenant. This lease was not filed for record until about the 1st of April, 1923, but it was drawn up by the cashier of the defendant bank, and one of the copies of it remained in charge of the officers of said bank until about September 1, 1922, and the defendant Mather, who was president of the bank, knew the contents of the writing during the year of 1922.

About September 1, 1922, Winans withdrew the writing from the bank and took it to the grain elevator conducted by the defendant Light. At that time Winans showed the contract to Light, who read it and returned it to Winans. At that time part of the wheat grown under the lease had been delivered to Light's elevator, but not all of it. Winans never authorized Light to pay any of the wheat money to Cooper.

On October 17, 1921, Cooper gave the defendant bank a note for $1,350, and, as security for the payment thereof, executed a chattel mortgage whereby he mortgaged to the bank numerous items of personal property, including his two-thirds interest in crops to be grown during 1922 on northwest 19—124—59, Day county, S. D., and his undivided one-half interest on crops to be grown in the year 1922 on northeast 23—124—60, in Brown county, S. D.

It will be noted that this last-mentioned description does not correctly describe either of the tracts covered by the Winans lease, nor does the amount of Cooper's interest as described in the mortgage correspond with his interest as provided by the lease. However, we may treat the questions involved in this appeal as though the mortgage did cover Cooper's interest in the grain grown on the entire Winans farm, as by so doing the result of the appeal will not be affected.

Copies of this chattel mortgage were promptly filed in both of the counties in which the tracts therein described are situated.

Winans was present at the threshing machine while the wheat grown under his lease with Cooper was being threshed, and under his direction all this wheat except the last load threshed was physically divided by putting two-thirds of the loads in one granary of the farm and one-third of the loads in another granary, also on that farm. As Winans was not satisfied that the last load had been divided, he proposed to Cooper that the wheat should be delivered to an elevator and division and settlement made between them after such delivery. At one of the times that they talked about this Winans told Cooper that he would like to have Cooper haul the grain in and pay the rent and settle up. Cooper said he would haul the grain in and settle afterward. Winans did not tell Cooper to sell the wheat.

Cooper drew most of the wheat, but not all of it, to Light's elevator. Light paid Winans for one-third of the wheat delivered to his elevator. Of the remainder Light paid part of the price to Cooper, or to his order, and, for the price of the wheat involved in this action, he issued three checks made payable to the order of Belden, Mather, and Winans. He did this because he had notice of the Winans lease, the bank's chattel mortgage, and the fact that Belden had a thresher's lien on the wheat. These checks he sent to the defendant bank and defendant Mather, who was president of the defendant bank, wrote the indorsement, "Belden, Mather & Winans," on the back of each check and received the sum of $415.70 on the checks. Mather made these indorsements and presented the checks for payment without the knowledge or consent of Winans. The $415.70 went into the defendant bank. The bank paid Belden's thresh bill of $139.25 and Cooper's share of the hail insurance tax, $32.66, and applied the remainder of the $415.70 on its chattel mortgage debt.

The cash rent due to Winans under his lease remains unpaid in the sum of $319.50, and there is still something unpaid on the bank's mortgage, after the application of the proceeds of the checks here in controversy.

It was the contention of the defendants at the trial, and it is their contention in this court, that Winans lost any claim he may have had to this wheat, for either of two reasons: First, because he surrendered title to the wheat by making a division at the threshing machine; second, because he waived any lien he may have had by consenting to the sale of the grain by Cooper.

■ ■ As to the first of these propositions, the court instructed the jury that:

"The main and controlling issue in this case for the jury to decide is, Was there a division of the crops in question from the machine between the plaintiff, Winans, and his tenant, Cooper, or was there no division of the crops made?"

Defendants' excepted to this instruction on the ground that the evidence shows conclusively that a division was made at the machine. But in fact there is a conflict of evidence on that point, ° and there is no evidence that Winans, by allowing two-thirds of the wheat to be put in one granary and one-third of it to be put . in another, intended to transfer the title to 'Cooper, or to release his right to retain enough of Cooper's grain to cover the cash rent. This instruction could not prejudice the defendants. The verdict shows that the jury decided this question in plaintiff's favor, and the verdict, having evidence to support it, will not be disturbed.

■ As to the contention that Winans waived his lien by consenting to a sale of the wheat by Cooper, the evidence upon that point also is conflicting. The particular right which Winans must waive in order to lose control of the grain in controversy is the right to retain enough of Cooper's grain to pay the cash rent. His right to do this was a right superior to the lien of the bank's mortgage. The burden of proving a waiver was upon the defendants. Whether there was a waiver proven was a question for the jury. Coughran v. Elevator Co., 22 S. D. 214, 116 N. W. 1122; McGarvey v. Prince, 32 S. D. 417, 143 N. W. 380; Adams v. A. A. Paton & Co. (Tex. Civ. App), 173 S. W. 546; Mangum v. Stadel, 76 Kan. 764, 92 P. 1093; Maelzer v. Swan, 75 Kan. 496, 89 P. 1037; Oliver v. Grande Ronde Grain Co., 72 Or. 46, 142 P. 541.

■ In order to support that burden, two things must be proven, viz.: That Winans consented to the sale by Cooper; and that, pursuant to such consent, 'Cooper actually sold the particular wheat in controversy.

This court has said in some of its decisions that a mortgagee waives his lien by consenting to a sale of the mortgaged property by the mortgagor, and that language was sufficiently precise where it was used. But in the instant case the rule must be more precisely stated. It is not the mere consent to a sale that waives the

lien, but an actual sale made pursuant to such consent. The waiver is in the nature of an estoppel, and no estoppel could possibly arise from mere consent without a sale.

Winans testified that he did not tell Cooper to sell the wheat and he testified that at the time the wheat was being delivered he showed to Light the lease in which he (Winans) reserved the right to hold enough of Cooper's grain to pay the cash rent due under the lease. That Light understood that Winans was not waiving this right is shown by the face of the checks. The liability of Mather and the bank is established by the undisputed fact that Mather indorsed the name of Winans on the checks, and that the bank received the proceeds.

There was a conflict of evidence on every material question, and the verdict of the jury will not be disturbed.

The judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, J., disqualified, not sitting.